---

GUSTHAL v. BOARD OF ALDERMEN OF CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

GREATER NEW YORK CHARTER—STREET-RAILWAY FRANCHISE.
    The provision of section 73 of Laws 1897, c. 378 (Greater New York Charter), that, "after the approval of this act, no franchise or right to use the streets, avenues, parkways, or highways of the city shall be granted by the municipal assembly to any person or corporation for a longer period than twenty-five years," etc., became operative on May 4, 1897, and applied to the board of aldermen then in office, notwithstanding its reference to a municipal assembly which was not to come into existence until January 1, 1898.

Appeal from special term.

Action by Leopold Gusthal against the board of aldermen of the city of New York and the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company. From an order granting a temporary injunction, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

William H. Page, Jr., for appellant railway company.

John Jeroloman, for appellant board of aldermen.

Francis M. Scott, for respondent mayor.

John M. Bowers, for respondent Gusthal.

RUMSEY, J. The action is brought by a taxpayer to restrain the board of aldermen of the city of New York from granting a permanent franchise to the defendant railway company to extend its tracks upon certain streets and avenues of the city of New York. After a hearing at the special term a temporary injunction was granted, restraining the board of aldermen, and each of its members, from voting to pass a resolution or any ordinance granting or purporting to grant the consent of the common council of the city of New York for a period exceeding 25 years, with renewals not exceeding 25 years, for the construction, use, and operation of certain railways,

more particularly mentioned in the order of injunction, but to which it is not necessary here to refer.    The theory upon which the action is brought is that section 73 of chapter 378 of the Laws of 1897, which in the act is called the "Greater New York Charter," forbids the granting, after the 4th day of. May, 1897, of any franchise or right to use the streets, to any person or corporation, for a longer period than 25 years, with an option of the city to provide for giving to the grantee the right, on a revaluation, to a renewal or renewals not exceeding, in all, 25 years.    If this section of the statute was in force at the time this action was begun, then the injunction was properly granted, and the order must be affirmed; otherwise not.    It may be remarked that it is conceded by the board of aldermen, who came into court appealing from this order, that it is doubtful whether they had the right to grant the franchise which was asked for at their hands.    That being so, it is a little remarkable, to say the least, that they should persist in the effort to exercise that doubtful right, in the face of opposition, when the necessary effect of such exercise would be to deprive the city of the great privilege of limiting future grants of franchises, and to burden it with grants of many permanent franchises to occupy its streets for railway purposes.    It is difficult to assign any good reason for this persistency, but as the board of aldermen insist upon their claim of the right to exercise this doubtful power, and will do so unless they are restrained, it devolves upon the court to decide whether they have the power to grant franchises, as formerly, or whether the section of the charter cited has already become operative.    The importance of the question can be seen from the fact, stated in the brief of the counsel for the aldermen, that various acts have been done by them which will be affected by the decision of this case, and various proceedings are pending which cannot well progress until the board shall have been advised of the extent of its powers in the premises.

Section 1611 of the Greater New York charter is a general one, which prescribes the time of taking effect of the act.    It provides that the act shall take effect on the 1st day of January, 1898, "provided however, that where by the terms of this act an election is provided or required to be held, or other act done, or forbidden prior to January first, 1898, then as to such election and such acts this act shall take effect from and after its passage and shall be in force immediately, anything in this chapter or act to the contrary notwithstanding."    It is apparent from this section that the legislature had in contemplation at the time of the passage of the act the existence of a necessity that certain parts of it should be taken out of the general provision respecting the time when the act should go into operation, and should be made to take effect at some earlier period, in order to carry out some particular intention of that body.    It is clear that this distinction was an important one, and a consideration of the act shows that many things which are provided for in it were necessarily to be excluded from the general rule as to the taking effect of the act, and were to be brought within the exception contained in the provision quoted above.    Wherever we find a specifica-

tion in the act that a thing shall be done or shall not be done at any other time than on the 1st day of January, 1898, it is a necessary deduction that the legislature intended that that particular provision should become operative at the time mentioned in the section which refers to it, and it should be taken out of the general rule of section 1611. Where, then, in any section, a particular time is specified, at or from which an act is forbidden to be done, it is evident that the intention of the legislature can only be accomplished by giving force to the time prescribed in the particular section, and holding that that section takes effect at the particular time stated in it. The cardinal rule in the interpretation of a statute is to ascertain the intention of the legislature in passing it; and that intention is to be gathered from the cause or necessity of making the statute, and other circumstances. A strict and literal interpretation is not always to be adhered to, and, where a case is brought within the intention of the lawmaker, it is within the statute, although, by a technical interpretation, it is not within its letter. It is the spirit and purpose of the statute which are to be regarded in its interpretation; and, if these find fair expression in its language, it must be so construed as to carry out the legislative intent, although such construction be contrary to the literal reading of some of its provisions. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the lawmakers. People v. Lacombe, 99 N. Y. 43, 49, 1 N. E. 599.

With this rule in mind, let us now turn to the examination of the section in question, and consider it in connection with the cause or necessity of passing it. The great territory which by that statute was consolidated into the city of New York was governed at the time of the passage of the act by a number of municipal bodies, variously constituted, and having various powers; but each having, in some form or other, the power to grant franchises to use streets for various purposes. For many years it had been sought to devise some means by which the city of New York might obtain some compensation for the grant of franchises to use its streets for railway and other purposes. Such grants were of great value to the corporations to which they had been given, but thus far but little, if any, revenue therefrom had been realized by the city. It was quite apparent that, upon the organization of the greater city, such franchises would be still more valuable than they had been before; and it might have been expected that, as soon as the act constituting the greater city should become a certainty, pressure would be put upon all these various municipalities, which for a short time possessed the right of granting permanent franchises, to grant such franchises to corporations before the statute creating the Greater New York took effect. That this was the condition of affairs, and that this was a reasonable and probable expectation, is well known to everybody, and it must be considered in giving construction to the provisions of the section now under examination. Bearing in mind this consideration, and also the plain intention of the legislature as evinced by the proviso in section 1611, let us see whether, by fair construction, section 73

of this act is taken out of the general rule with regard to the time when the act shall take effect. The words of the act are:

"After the approval of this act, no franchise or right to use the streets, avenues, parkways, or highways of the city shall be granted by the municipal assembly to any person or corporation for a longer period than twenty-five years; but such grant may, at the option of the city, provide for continuing to the grantee the right on a fair revaluation or revaluations, to renewals not exceeding in the aggregate twenty-five years."

The first words of this section are a little peculiar. They are, "After the approval of this act." This is an expression not often used in reference to a time when a thing is forbidden by a statute. In the connection in which it is used in this enactment, it has peculiar significance. It refers to a particularly specific date (which is always printed at the head of a statute), which remains of record, and which is easily ascertainable. In this case it was the 4th day of May, 1897. It is quite clear that the intention of the legislature was that section 73 should have some effect at that date; otherwise the use of the words, "After the approval of this act," would be meaningless. We start, then, in the examination of this section, with the well-expressed intention of the legislature that a certain thing mentioned in that act is forbidden after the 4th day of May, 1897. That thing is clearly the granting of a franchise or right to use the streets for more than 25 years. Nothing can be plainer than that, and, if that were all of the act, there can be no doubt that no permanent franchise could have been granted after the 4th of May, 1897. But it is said that this prohibition only applies to the municipal assembly, because the words of the statute are, "No franchise or right to use the streets of the city shall be granted by the municipal assembly." The municipal assembly, however, does not come into existence until the 1st day of January, 1898. Its members were not elected until the general election in November, 1897. Therefore, even though this section had not existed, the municipal assembly could not have granted these franchises, or any other franchises, because there was no such body. We have, therefore, a section of the statute providing that after the 4th day of May, 1897, a certain body of men, who do not come into existence until the 1st of January, 1898, shall not do an act. This provision, literally construed, is clearly absurd; and, if that construction is given to it, it is quite clear that the legislature could have had no intention, by inserting the words, "After the approval of this act," to forbid the granting of a franchise at that time, or that the section should take effect at that time. But those words are the important ones in the section, because they declare the intention of the legislature that as to this power the section shall be taken out of the general provision by which the act was to take effect on the 1st of January, 1898. It is a settled rule that the court is not compelled—indeed, it is not permitted—to give absolute and unqualified effect to a single section or clause of a statute, however direct, plain, and unambiguous, considered by itself, the language may be, if there are other provisions inconsistent with the literal and unrestricted interpretation of such clause or section, unless the repugnancy is irreconcilable, in which case it is the duty of the court

to preserve the paramount intention, so far as it is consistent with the rules of the law, although this may lead to the rejection of some subordinate and secondary provision. People v. McClave, 99 N. Y. 83, 89, 1 N. E. 235. The effort in every case must be to ascertain and carry out the intention of the legislature, and where the use of certain words in a statute is inconsistent with that intention, or makes the whole clause meaningless and absurd, it is the duty of the court to reject those words, when by rejecting them the clear intention of the legislature is carried out. In this particular case, if effect is given to the words "the municipal assembly," it is quite clear that the section cannot take effect until the 1st day of January, 1898; and the act which the legislature says shall not be done after the 4th day of May, 1897, may still be done, in defiance of the express provisions of the law. We cannot accede to any interpretation which involves this manifest absurdity. In an act like this, involving many hundred separate sections, relating to a large number of different matters, it would not be strange to find some loose or careless expressions or superfluous words. It would be very strange were it otherwise. In ascertaining the meaning of any one of the several sections of such an act, it is imperatively necessary to look for the paramount intention of the legislature, and, when that has been ascertained, to carry it out by the application of every rule which has been laid down for the interpretation of written instruments. In this particular case it is not difficult, we think, to ascertain the intention by the application of plain and well-established rules, and that intention is, clearly enough, that section 73 of this act shall take effect at the time when the act was signed by the governor, and that from that time the granting of any franchises, except such as are mentioned in that section, within the territory of the greater city of New York, is forbidden.

We have examined the other points suggested by the learned counsel for the appellants, but we find that none of them are necessary to be determined at this time. For the reasons above given, we are satisfied that the conclusion reached by the learned justice at the special term, in granting this injunction, was correct, and that this order must be affirmed, with $10 costs and disbursements. All concur.