(133 App. Div. 556.)

PEOPLE ex rel. SOUTH SHORE TRACTION CO. v. WILLCOX et al.

(Supreme Court, Appellate Division, First Department.   July 13, 1909.)

1. STREET RAILROADS (§ 24*)—CONSTRUCTION.

The Legislature cannot dictate to the local authorities the conditions which they must impose in giving the consent provided for by Const. art. 3, § 18, as supplemented by Railroad Law (Laws 1890, p. 1108, c. 565, as amended by Laws 1907, p. 203, c. 156, § 1) § 91, before a street railroad can be constructed or operated.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 24.*]

2. STREET RAILROADS (§ 22*)—CONSTRUCTION—CONSENT OF STATE OFFICERS.

The Public Service Commission is bound to approve the building of a street railroad as provided by Public Service Commission Law (Laws 1907, p. 920, c. 429) § 53, in all cases where the local authorities have granted the consent provided for by Const. art. 3, § 18, as supplemented by Railroad Law (Laws 1890, p. 1108, c. 565, as amended by Laws 1907, p. 203, c. 156, § 1) § 91, and the commission has determined, as the statute provides, that the proposed construction is "necessary and convenient for the public service," though it does not approve the terms imposed by the local authorities.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 22.*]

Certiorari by the People, on the relation of the South Shore Traction Company, against William R. Willcox and others, constituting the Public Service Commission, to review the denial of relator's application for approval of the construction of a railroad authorized by a contract between the relator and the board of estimate and apportionment of the city of New York. Reversed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Clarence Lexow, for relator.

Francis K. Pendleton, Corp. Counsel, for the City of New York, in support of the relator.

George S. Coleman, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

INGRAHAM, J.  The relator was organized as a street surface railroad company to construct a street surface railroad on Long Island extending to the city line.  Its certificate of incorporation was filed on the 27th of February, 1903, and it complied with all the conditions and requirements of the laws of this state, and the State Board of Railroad Commissioners granted to the relator a certificate of public convenience and necessity under section 59 of the railroad law (Laws 1890, p. 1082, c. 565), as added by Laws 1892, p. 1395, c. 676, and amended by Laws 1895, p. 317, c. 545, § 1.  On December 24, 1908, the relator duly filed a certificate for the extension of its route from the city line through the borough of Queens, to and over the Queensboro Bridge, into the borough of Manhattan in the city of New York, under section 90 of the railroad law (Laws 1890, p. 1108, c. 565, as amended by Laws 1895, p. 791, c. 933, § 1), and subsequently applied to the board of estimate and apportionment of said city for the consent of the local authorities and for a contract with the city of New York for the construction, operation, and maintenance of the extension of the relator's road over the streets of the city of New York and the Queensboro Bridge, and on May 20, 1909, such consent was duly given and a contract duly executed between the city of New York, and the relator, under which the relator was authorized to construct, maintain, and operate its railroad over its extended route on certain conditions therein specified and on making certain payments to the city of New York for the use of its streets and the Queensboro Bridge.  On the 28th day of December, 1908, the relator applied to the defendant for its permission and approval to its extension, which after a hearing was denied, and a final order was subsequently made by the defendants, whereby, after reciting the application of the relator "for the permission and approval of the commission to the construction and exercise of the franchise to operate an extension of its street surface railroad upon the route therein described," the hearing had by the defendants, and that testimony having been taken upon said hearing, "and the commission having determined that the exercise of the franchise upon the terms and conditions imposed in the franchise contract is not convenient for the public service," it was ordered that the application of the relator be denied; and this proceeding is to review that determination.

The petition upon which the writ of certiorari was granted alleged that the terms and conditions upon which the consent of the city was granted provided for in the contract between the relator and the city of New York were the most favorable to the city and stringent upon the relator that had ever been secured in the public interest; that at the hearing before the defendants the necessity and convenience of the relator's route was conceded, and there was no testimony or evidence of any kind denying or in any manner questioning such convenience or necessity, nor any testimony or evidence objecting to the terms and conditions of such franchise rights or any thereof; that the reasons for the denial of the application of the relator appeared from the opinion of Commissioner Bassett, a copy of which is annexed to the petition, from which it appeared that the necessity and convenience for the public service of the construction of the route specified in the consent of the city and contract with the city is absolutely conceded,.

and that the same is directly decided in the relator's favor, but that some of the terms and conditions prescribed by the local authorities of the city of New York for the protection of the interests of the public do not meet with the approval of a majority of the commission, and that the application of the relator for permission and approval was therefore denied; that such denial was not based upon any testimony, oral or documentary, with respect to the terms or conditions of such consent or contract, but is founded wholly upon the defendants' construction of the terms and conditions thereof, and their interpretation and deductions therefrom; that the defendants were without jurisdiction or power to decide upon the terms and conditions established by the local authorities in the public consent or contract; that said denial was based upon and related to terms and conditions in said public consent and contract which were peculiarly within the power and authority of the board of estimate and apportionment, and did not relate to any of those matters which under the law are intrusted to said commission, or with reference to which they are invested with any power or authority whatever.

From the opinion of Commissioner Bassett, which was adopted by a majority of the commission, the commission found that the relator's "route is a trunk line admirably adapted to the development of a great territory within easy reach of the myriads who are now crowding Manhattan, because they must live where they can have reasonable access to their work"; that the commission looks with unusual favor upon the proposed route of the relator; that, under these circumstances, the commission would not think of withholding its prompt approval for the construction of the proposed railroad and the exercise by the relator of the franchise granted by the local authorities if it were not compelled to do so by controlling considerations of public policy affecting the future welfare of the greater city, and these considerations were that, under the franchise granted by the local authorities, the relator is put in a position of control for street railroad purposes over the only available thoroughfare between Long Island City and Jamaica for a period of 50 years, and no provision is made by which the relator can be compelled to build the extensions necessary for the full development of the territory dependent upon this thoroughfare as its needs may arise. The conditions that the local authorities had inserted in their contract with the relator are then criticised; and the commission say:

"It should not be the aim of such a franchise to obtain the greatest possible payments to the city or impose the greatest possible burdens upon the company. To do these things is usually to prevent the company from rendering proper service to the people. In the case of the franchise now before us, I think that the financial burdens imposed upon the company might well be mitigated, and the rendition of good service, together with the construction of needed extensions, made more readily obtainable."

Commissioner McCarroll submitted a memorandum stating as his reasons for dissenting from the determination of the other commissioners that it was within the right and power of the city to decide upon the terms on which it would grant a franchise to a street railroad company, and that in this case the consent and contract carefully pro-

tect the city's interests. By the return of the defendants it appears that the report of Commissioner Bassett, annexed to the petition, was adopted by a majority of the commissioners; that the commission was unanimous in believing that a railroad constructed and properly operated over the route described in said franchise contract would under proper conditions be of great benefit to the community, but that a majority of the commission believed that upon the facts and for the reasons set forth in the opinion of Commissioner Bassett, a copy of which was attached to the petition, and for other reasons, the exercise of such franchise under the terms and conditions contained in said contract is neither necessary nor convenient for the public service, and the approval of the exercise of the said franchise would be against the best interests of the public, and would prevent the proper future transit development of the very territory through which the proposed road would run. The testimony taken before the commission is annexed to the return, but there was nothing to sustain the determination of the commission.

It therefore appears that the commission expressly determined that the public interest required the construction and operation of a railroad upon the route over which the relator had acquired its franchise under the general railroad law and the consent of and contract with the city of New York; but it refused its "permission and approval" for the construction of the extension of the relator's railroad upon the ground that it considered that the conditions upon which the city had given its consent did not meet the approval of the commission—thus assuming the position of dictating to the local authorities the terms and conditions which they must impose in giving the consent of the city to the construction and operation of the railroad if there was to be a railroad. By section 18, art. 3, Const., it is provided that:

"No law shall authorize the construction or operation of a street railroad except upon the condition that * * * the consent also. of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained."

By section 90 of the railroad law it is provided that:

"Any street surface railroad corporation at any time proposing to extend its road or to construct branches thereof, may from time to time make and file * * * a statement of the names and description of the streets, roads, avenues, highways and private property in or upon which it is proposed to construct, maintain or operate such extensions or branches. Upon filing any such statement and upon complying with the conditions set forth in section ninety-one of the railroad law, every such corporation shall have the power and privilege to construct, extend, operate and maintain such road, extensions or branches upon and along the streets, avenues, roads, highways and private property named and described in its certificate of incorporation or in such statement."

And section 91 of the railroad law (Laws 1890, p. 1108, c. 565, as amended by Laws 1907, p. 203, c. 156, § 1) requires the consent of the local authorities having control of the streets or highways before the street surface railroad or extensions or branches thereof shall be constructed.

The franchise to construct and operate a street railroad is granted by the railroad law, and comes into existence when the provision of

that law is complied with. The provision of section 18, art. 3, Const., limits the power of the Legislature in granting such a franchise, so that the law which grants it must require as a condition of the grant that the local authorities having control of the streets and highways upon which it is proposed to construct the railroad shall consent to its construction. It is obvious that the Legislature would have no power to dictate to the local authorities the conditions upon which such a consent should be given. That question must be determined by the local authorities, and the condition that they impose must be complied with before the right to construct or operate the road comes into existence. The conditions under which a franchise shall be granted are to be determined by the Legislature. It only can grant the franchise, but it cannot grant a franchise for a street railroad except upon the condition that the consent of the local authorities shall "be first obtained." The Legislature is not bound to grant a franchise because the local authorities want it or have consented to it, and it can impose other conditions upon the grant of a franchise or upon its operation after it is granted. The consent of the local authorities, however, is required before a street railroad can be constructed or operated. As was said in Kittinger v. Buffalo Traction Co., 160 N. Y. 377, 54 N. E. 1081:

"The municipal authorities granting this consent derived their powers directly from the Constitution. * * * In the exercise of this power the local municipal authorities are by the Constitution and the statute clothed with sovereignty, and therefore beyond the direction and control of the courts, and, we may add, of the Legislature."

See, also, Adamson v. Nassau Electric R. Co., 89 Hun, 261, 34 N. Y. Supp. 1073.

We have now to consider the effect of the Public Service Commission law (chapter 429, p. 889, Laws 1907), and the powers of the Public Service Commissioners over the granting of a franchise for a street railroad. This act abolished the board of Railroad Commissioners and other commissions, and transferred all the powers and duties of such board and commissions upon the commissioners appointed under the provisions of that act. Such commissioners were state officers, and the act was a general one. Gubner v. McClellan, 130 App. Div. 721, 115 N. Y. Supp. 755. By section 53 of the act it is provided that:

"Without first having obtained the permission and approval of the proper commission, no railroad corporation, street railroad corporation or common carrier shall begin the construction of a railroad or street railroad, or any extension thereof * * * ; nor, except as above provided in this section shall any such corporation or common carrier exercise any franchise or right under any provision of the railroad law, or of any other law, not heretofore lawfully exercised, without first having obtained the permission and approval of the proper commission. The commission within whose district such construction is to be made, or within whose district such franchise or right is to be exercised, shall have power to grant the permission and approval herein specified whenever it shall after due hearing determine that such construction or such exercise of the franchise or privilege is necessary or convenient for the public service."

It is quite clear that the Legislature did not intend to, as it could not, substitute the Public Service Commission for the local authorities. The consent of the local authorities was still necessary before the grant

of a franchise could be complete. They had power to impose such conditions as the interest of the municipality required. With such conditions for the exercise of the franchise the Public Service Commission had no concern. It could not demand that the local authorities add to or take from the conditions upon which.they were willing to consent. The state, however, had the power to say that no franchise should be acquired or exercised unless it became necessary or convenient for the public service; and so it imposed upon a corporation or individual, before such a franchise could be acquired or exercised, the obligation of satisfying the "proper commission" that the construction of the proposed railroad or the exercise of the franchise or privilege was necessary or convenient for the public service. The power to grant the "approval and permission" authorized by the section was given to the commission "whenever it shall after due hearing determine that such construction or such exercise of the franchise or privilege is necessary or convenient for the public service."

There was thus presented to the Public Service Commission that single question. It was all they were authorized to determine, and upon the determination of that question depended the "grant" of the "permission and approval." It was a determination after a hearing and was in its nature judicial. The Public Service Commission had no right to arbitrarily reject an application because of the action of. the local authorities in granting or refusing their consent. It was not constituted a court to hear an appeal from the determination of the local authorities as to conditions which it should impose on giving its consent to the construction or operation of the proposed road. If the Public Service Commission determined that the construction of the railroad or the exercise of the franchise or privilege was necessary or convenient for the public service, it was then the duty of the commission to grant their permission and approval. As I understand the opinion of the majority of the commissioners and the return to the writ, the Public Service Commission did determine that the construction and operation of this proposed railroad was both necessary and convenient for the public service. In the return it says that:

"They [the commissioners] were unanimous in believing that a railroad properly constructed and properly operated over the route described in the said franchise contract would under proper conditions be of great benefit to the community."

Having come to that determination, it was, as I look at it, their duty to grant the application. The fact that the commission did not concede that the exercise of the franchise granted by the municipal authorities upon the terms granted was for the public interest was of no consequence. The commission was not responsible for such terms. If a railroad over the proposed route was required by the public—was "necessary or convenient for the public service"—then I think it was the duty of the defendants to grant the application, and, as I understand from the return that they have determined that the proposed railroad was required, the denial of the application was error.

It follows that the determination of the commission must be reversed and the proceedings be remitted to the commission with di-

rection to grant the application, with $50 costs and disbursements to the relator.

McLAUGHLIN, LAUGHLIN, and CLARKE, JJ., concur.

HOUGHTON, J. (concurring). I concur in reversing the determination of the commission in the present case with directions to grant the application of the relator; but I think the Public Service Commission has a broader power to withhold its permission and approval to the exercise of a franchise than is stated by Mr. Justice INGRAHAM in his opinion.

I do not think the commission is absolutely bound to grant a certificate of approval and permission to build and operate a street railway in all cases where the public authorities have granted permission. Ability to serve the public by furnishing proper transportation is an element which the commission is required to take into consideration, as well as necessity for the construction of a railway. A transportation corporation which faces certain bankruptcy the moment it starts cannot properly serve the public. Reasonable prosperity is necessary to reasonable service. Such a corporation only cumbers the ground, and prevents another corporation from occupying the same field and giving proper service. In its eagerness to build a transportation corporation might agree to pay such a high price for the franchise and stipulate to carry passengers at such a low fare that it would be perfectly manifest that it could never operate at a profit.