PAUL BLANSHARD, Respondent, *v.* THE CITY OF NEW YORK et al., Appellants.

(Argued February 28, 1933; decided May 23, 1933.)

*Clarence J. Shearn, Sigourney B. Olney* and *George D. Yeomans* for Brooklyn Bus Corporation, appellant.

*Arthur J. W. Hilly, Corporation Counsel (William E. C. Mayer* and *J. Joseph Lilly* of counsel), for City of New York et al., appellants.

8

*Louis Waldman* for respondent.

CRANE, J. The Appellate Division has certified four questions to this court, all of which relate to the sufficiency of the complaint. As we have said in other cases of this nature, the allegations pleaded are assumed to be true, whereas, upon a trial, the plaintiff's proof may fall far short of establishing them as facts. The main point argued and briefed is the right of a taxpayer, under section 51 of the General Municipal Law (Cons. Laws, ch. 24), to maintain an action to restrain the use of the streets of the city of New York by the Brooklyn Bus Corporation, which is attempting to operate under a void or illegal franchise, granted by a resolution of the Board of Estimate and Apportionment of that city.

The Brooklyn Bus Corporation is a domestic corporation organized and existing under and by virtue of, the Transportation Corporations Law (Cons. Laws, ch. 63). No attack in this action is made upon its corporate franchise. It had no rights in the streets of the city of New York because of its incorporation. Before it could operate its proposed bus line it was necessary to obtain a permit or secondary franchise, pursuant to sections 74 and 1458 of the Greater New York Charter (Laws of 1901, ch. 466; Laws of 1913, ch. 769, as amd.; L. 1914, ch. 467; Local Law, 1925, No. 5). The complaint alleges that these provisions of the charter have not been complied with, and, if this be so, the action by the plaintiff is maintainable.

The Legislature of the State grants the corporate franchise. To dissolve the corporation or take away its corporate franchise, the action must be brought in the name of the People by the Attorney-General. This is separate and distinct from the property right which a railroad or a bus line may have to operate in the streets of a city. While these rights are called " franchises " or " secondary franchises," they are really rights, kept and maintained on certain conditions. (See the distinction

in *People* v. *O'Brien*, 111 N. Y. 1; also *Ghee* v. *Northern Union Gas Co.*, 158 N. Y. 510.)

Section 18 of article III of the Constitution provides that the Legislature cannot authorize any railroad to operate in a particular street of a city. The city must give its consent as well as the property owners. To this consent the city may annex such terms and conditions as it pleases. (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244; *People ex rel. South Shore Traction Co.* v. *Willcox*, 133 App. Div. 556; affd., 196 N. Y. 212.)

This consent is not such a franchise as calls for action by the People through the Attorney-General whenever it has been granted contrary to law.

We said in *Beekman* v. *Third Avenue R. R. Co.* (153 N. Y. 144, 152): " The use or occupation of the streets for such purposes, without the grant or permission of the state through the legislature, constitutes a nuisance, which may be restrained by individuals injuriously affected thereby. (*Fanning* v. *Osborne*, 102 N. Y. 441.) The city authorities have no power to grant the right except in so far as they may be authorized by the legislature, and then only in the manner and upon the conditions prescribed by the statute. (*Davis* v. *Mayer, etc.*, 14 N. Y. 506; *Milhau* v. *Sharp*, 27 N. Y. 611; *People* v. *Kerr*, Id. 188.)

" * * *

" The legislature, however, in virtue of its general power over municipalities, may regulate the mode and manner in which such consent shall be given by the authorities having the control of the street, and may prescribe the conditions upon which it may be given, and all these matters have been regulated by statute. (Laws 1892, chs. 306, 676; Laws 1893, ch. 434.) The questions certified to us by the court below call for a construction of this statute or certain important provisions thereof which affect the validity of the franchise granted to the defendant. In conferring the franchise

upon the defendant to operate a railroad in the streets designated, the common council did not act in the exercise of any natural or inherent power pertaining to the city, but under delegated powers, to be used and exercised for public purposes, and, in order to vest the defendant with the right claimed, it must appear that there was a substantial compliance with the provisions of the statute."

Section 74 of the Greater New York Charter provides what the city of New York must do to give consent to the operation of a railroad or bus line in its streets. Nothing in the Constitution prevents the Legislature from adding these restrictions and limitations to the granting of consents. (*Matter of Thirty-fourth Street R. R. Co.*, 102 N. Y. 343.) The city may impose others. Thus, section 74 is not challenged. What is challenged by the complaint is the action of the Board of Estimate in failing to comply with this law. Unless a consent be granted, in accordance with section 74, the railroad or bus line has no right in the street. It is a trespasser, and any person may bring action as a taxpayer to enjoin its operation. The same thing holds true when the consents of property owners have not been obtained. Suppose neither the city nor the property owners had consented, would there be no remedy except by action of the Attorney-General? The consent is alleged to be void; there is no consent unless section 74 of the charter has been complied with, and the complaint alleges facts showing that the requisites are lacking.

The Greater New York Charter, section 74, provides that before any grant of a " franchise or right " to use any street shall be made by the Board of Estimate and Apportionment the following things shall be done:

(1) A public hearing shall be held upon the petition therefor.

(2) The Board of Estimate and Apportionment shall make inquiry as to the money value of the franchise.

(3) The Board shall make inquiry as to the adequacy of the compensation proposed to be paid therefor.

(4) The Board shall embody the result of such inquiry in a form of contract.

(5) The Board shall hold a public hearing on the proposed contract after public notice.

The complaint alleges that the Board of Estimate and Apportionment of the city of New York on the 29th day of May, 1931, passed a resolution awarding a franchise to the defendant, the Brooklyn Bus Corporation, to operate twenty certain routes in the city, setting forth the form of the proposed contract and that thereafter on the 4th day of June, 1931, pursuant to said resolution, the Mayor of the city of New York signed such proposed contract.

The pleader then sets forth that the resolution and contract were illegal and void for failure, among other things, to comply with the requirements of section 74 of the charter. The following omissions are alleged:

(1) That "the public hearings contemplated and required by law for such purposes were not held."

(2) That the Board of Estimate and Apportionment failed to make *any* inquiry as to the money value of the franchise or rights proposed to be granted upon the petition of the Brooklyn Bus Corporation.

(3) That the Board of Estimate and Apportionment failed to make inquiry as to the adequacy of the compensation.

If it be true — and we must assume in discussing the sufficiency of a pleading that the allegations are true — if it be true that these formalities and requirements were not met by the Board of Estimate and Apportionment, then the alleged grant of the rights in the streets was void and illegal. The purpose of these charter provisions is apparent on their face. The city should procure the most advantageous return, all things considered, for the right to operate buses or railroads in its streets and protect the public against favoritism and unfair dealing. Notice must be given of hearings upon the petition. The proposed contract must be published and a further hearing

afforded upon its merits. Until these things have been done the action of the Board of Estimate and Apportionment, in granting a franchise, and the Mayor, in signing the contract, is of no effect. Upon a trial the facts may appear in an entirely different light, but, taking the complaint as our starting point, the plaintiff is entitled to be heard and afforded an opportunity to produce his proofs.

There is a great distinction between attacking the action of the Board of Estimate, the legislative body, for fraud and bad motives, and attacking it for lack of power. The first constitutes an attack upon its legislative action, which cannot be done for fraud or improper motives. This is the sole ruling in *Kittinger* v. *Buffalo Traction Co.* (160 N. Y. 377). This case held that the consent given by the common council of the city of Buffalo to the operation of a railroad over certain city streets could not be attacked on the ground of fraud or bad motives of the members of the council. Within their powers they acted as did the Legislature of the State. For this reason it was held that the complaint did not state a cause of action. This did not hold, however, that under section 1925 of the Code of Civil Procedure, or under the Taxpayers' Act, chapter 531 of the Laws of 1881, an action might not have been maintained to restrain the operation of a railroad when no consent had been obtained.

Eliminating these allegations of motive from the complaint, we have the other allegations, that the consent was not given in accordance with section 74, and that the requirements of that section as to hearings and inquiry were not complied with.

The appellant insists that this action can only be maintained by the Attorney-General in behalf of the People of the State, but this court has held otherwise. (*Village of Stillwater* v. *Hudson Valley Ry. Co.*, 255 N. Y. 144; *Blaschko* v. *Wurster*, 156 N. Y. 437.) (See, also, *Norris* v. *Wurster*, 23 App. Div. 124; *Gusthal* v. *Strong*,

23 App. Div. 315; and *People ex rel. Metropolitan Street Ry. Co. v. Tax Commissioners*, 174 N. Y. 417, pp. 435, 436.)

The appellant makes much of *City of New York v. Bryan* (196 N. Y. 158, 166), and insists that this is an authority for its contention. A careful reading and analysis of this case show that it points just the other way. In the first place, the franchise in that case had been legally granted and no question was raised as to its validity. In the second place, a secondary franchise, or the right to build a tunnel under the streets, was so linked up with the primary franchise as to constitute part of its corporate existence or entity. The attack upon the franchise as having terminated was also an attack upon the existence of the corporation or the rights of its stockholders. The New York and Long Island Railroad Company was incorporated under the General Railroad Act of 1850 for the construction and operation of a railroad from Long Island City through a tunnel under the East river and under streets and lands in the city of New York to a connection with the New York Central and Hudson River railroad at Ninth avenue and Thirtieth street. The General Railroad Act prescribed that on the failure of the company to finish its road and put it in operation within ten years from the time of its filing articles of incorporation its corporate existence and powers would cease. The consent and permission of the municipal authorities, however, to construct the tunnel and railroad under the city streets contained no limit of time for completion, which meant that the work had to be completed within a reasonable time.

Upon a submitted controversy the Appellate Division was asked to decide that the privileges granted by the Board of Aldermen to the New York and Long Island railroad ceased and determined on January 1, 1907, with the life of the corporation. That court, in rendering judgment, held that the rights and privileges passed to the trustees, under section 30 of the General Corporation

Law (Cons. Laws, ch. 23), and that the occupation of the tunnels, tracks and structures was lawful. This court, through CULLEN, Ch. J., noted that the agreed statement of facts did not state the extent of the work done by the company and whether the work had been prosecuted with reasonable diligence, or whether the company at the time of its dissolution was still engaged in its prosecution. Whether the street franchises terminated with the corporate franchise was, therefore, the point in question, and the judge, in his opinion, states: " The legislature," he said, had provided by the act under which the company was organized that unless it finished its road and put it in operation within ten years from the filing of its articles of incorporation, ' its corporate existence and powers shall cease.' Though the franchise to maintain the railroad was not dependent on the existence of the corporation, the statute provides not only that the corporate existence shall cease, but the corporate powers also. * * * What possible benefit could accrue from the dissolution of the corporation for failure to exercise its franchises in time, if the franchise itself is to continue for the benefit of the stockholders, who might form a new corporation and to it transfer the franchise? "

These are the questions bearing upon the rights of the corporation, its trustees and stockholders, and the city authorities, which, the court held, should not be determined without making the people a party to the action to determine the corporate rights. What is more germane to this litigation is the fact that the opinion did state that if the railroad trustees sought to enter upon the streets, or parts of the streets, in the city *not already in their possession*, the city authorities doubtless could resist such action, for the franchise of the company in respect thereto had ceased. This decision, therefore, does not justify the proposition that a trespass upon the streets of the city of New York by an unlicensed or unauthorized bus corporation cannot be restrained either by the city

or a taxpayer, but that the action must be brought by the Attorney-General. Chief Judge CULLEN, who wrote the opinion in the *Bryan* case, concurred in the decision of *Norris* v. *Wurster* (23 App. Div. 124), wherein it was held that the granting of a franchise to operate a street railroad in the city of New York for a longer term than twenty-five years being illegal, an injunction would issue in a taxpayer's action to restrain the railroad from any further proceedings.

The order of the Appellate Division should be affirmed, with costs, and certified questions 1 and 2 answered in the affirmative, and 3 and 4 in the negative.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not voting.

Order affirmed, etc.