TOMPKINS BUS CORPORATION, Plaintiff, *v.* FIORELLA H. LAGUARDIA, as Mayor of the City of New York, and Others, Defendants.

Supreme Court, New York County, June 25, 1935.

*James B. McDonough, Jr.,* for the plaintiff.

*Paul Windels, Corporation Counsel* [*Joseph L. Weiner* and *Arthur A. Segall* of counsel], for the City of New York.

*L. W. & A. B. Widdecombe,* for the defendant De Camp Coach Corporation.

COTILLO, J. This is a motion by the city of New York and the board of estimate and apportionment to dismiss the complaint for failure to state a cause of action.

The action is brought by Tompkins Bus Corporation to declare null and void a bus franchise awarded to the defendant De Camp Coach Corporation and to enjoin the operation of buses pursuant to the franchise. A prior action, seeking to enjoin the granting of the franchise before its final adoption by the board of estimate and apportionment, was dismissed as premature, on the ground that the granting of a franchise was a legislative act and, therefore, could not be enjoined. The dismissal was "without prejudice to a new action if franchise be granted to this defendant." The order of dismissal was affirmed by the Appellate Division (244 App. Div. 710). The franchise having thereafter been awarded to the De Camp Coach Corporation, the present action was commenced.

The plaintiff's claim that the franchise is invalid because section 74 of the Greater New York Charter, as amended by Laws of 1914, chapter 467, section 1, was not complied with proceeds upon the assumption that the " petition " for a franchise, referred to in that section, is required to contain the terms and conditions upon which the franchise is sought. The section provides that before any grant of a franchise shall be made by the board of estimate and apportionment, " the following things shall be done: (1) A public hearing shall be held upon the petition therefor. (2) The board of estimate and apportionment shall make inquiry as to the money value of the franchise. (3) The board shall make inquiry as to the adequacy of the compensation proposed to be paid therefor. (4) The board shall embody the result of such inquiry in a form of contract. (5) The board shall hold a public hearing on the proposed contract after public notice." (*Blanshard* v. *City of New York,* 262 N. Y. 5, at pp. 11 and 12.) Although section 74 expressly provides that the petition for the franchise, which initiates the proceedings leading up to the granting thereof, is to be published " in full " prior to the hearing upon the petition, it fails to specify what the petition is to contain.

The petition filed by the De Camp Coach Corporation consisted of an application for a franchise to operate buses upon routes

described in detail in the petition, but contained nothing else. No mention was made of the term of the proposed franchise, of the conditions upon which it was to be granted, or of the compensation to be paid. It is conceded that this petition was properly published in accordance with the requirements of section 74. Admittedly, therefore, there has been literal compliance with the charter provision. Only by reading into section 74 a requirement that the petition must contain the terms and conditions of the proposed grant is it possible to maintain that there was no publication of a proper petition.

Although the question is not free from doubt, the court is of the opinion that the petition in the instant case must be deemed to comply with the dictates of the charter. The charter requires merely a petition for the grant of a franchise. It does not state that the terms and conditions of the franchise are to be included in the petition or to be published as part of the petition. If the board of estimate and apportionment could proceed to grant the franchise immediately after the hearing held upon the return day of the petition, there might be considerable justification for reading into section 74 an implied requirement that the petition contain the terms and conditions of the contemplated grant. Otherwise, no adequate opportunity to oppose the application would be presented to the public, and the purpose of the charter provisions, namely, that " the city should procure the most advantageous return, all things considered, for the right to operate buses or railroads in its streets and protect the public against favoritism and unfair dealing " (*Blanshard* v. *City of New York, supra,* 12), might be defeated. The fact is, however, that section 74 does not permit the board of estimate and apportionment to award a franchise immediately after the hearing upon the petition. On the contrary, that section requires the board, at the hearing upon the petition, to " make inquiry as to the money value of the franchise or right proposed to be granted and the adequacy of the compensation proposed to be paid therefor " and to " embody the result of such inquiry in a form of contract, with all the terms and conditions, including the provisions as to rates, fares and charges," which proposed contract is to be published in full prior to " a public hearing thereon at which citizens shall be entitled to appear and be heard." Ample opportunity is, therefore, afforded to the public after the hearing upon the petition to appear and be heard in respect to the terms and conditions of the proposed grant.

Moreover, the failure of section 74 to specify that the petition for a franchise is to contain anything more than the application therefor appears to be significant, in the light of the fact that the very same

section, in referring to the proposed contract to be prepared and published after the hearing upon the petition, expressly and definitely states that the contract is to contain " all the terms and conditions, including the provisions as to rates, fares and charges." Had the Legislature intended the petition to contain all the terms and conditions of the proposed franchise, it is fair to assume that it would have used language to that effect, in the same manner as it did with respect to the proposed contract.

In view of the foregoing it would seem to be a fair conclusion that the petition of the De Camp Coach Corporation constituted a proper petition within the contemplation of section 74 of the charter. It may be well to mention, in this connection, that it has apparently been the established practice for a number of years to initiate all franchise proceedings under section 74 of the charter by a petition similar in form and contents to that involved in the instant case. The first ground of attack upon the franchise must, therefore, be overruled.

The second contention of the plaintiff is that the proposed resolution spreading the proposed contract upon the minutes of the board of estimate and apportionment for publication and further action thereon was invalid because it was adopted by only eleven out of sixteen votes possessed by the members of the board of estimate and apportionment, whereas section 74 requires " three-fourths of the total number of votes, to which all the members of the board shall be entitled." A fair reading of the section, however, indicates that the requirement of " three-fourths of the total number of votes " applies only to the actual granting of the franchise. The mere spreading of the proposed contract upon the minutes of the board, together with the form of resolution or resolutions for the granting of the same, occupies a different category. It constitutes only one of the successive steps leading up to the ultimate granting or withholding of the franchise. It is only the final and actual grant which requires the concurrence of three-fourths of the total number of votes. The spreading of the proposed contract upon the minutes of the board and the adoption of a form of resolution for the granting of the contract, without actually granting the same, is an ordinary act of the board and is, therefore, governed by the provisions of section 226 of the charter, as amended by Laws of 1917, chapter 258, section 1, which reads, in part, as follows: " Except as otherwise specifically provided, every act of the board of estimate and apportionment shall be by resolution adopted by a majority of the whole number of votes authorized by this section to be cast by said board."

The plaintiff also urges that the franchise whose validity it assails is invalid because it contains a number of illegal provisions, such as (a) the agreement of the De Camp Coach Corporation not to oppose before the transit commission the granting of certificates of convenience and necessity to any other companies to which the city has granted or may hereafter grant franchises, and (b) the agreement of the company that the rate of fare fixed in the franchise is not to be increased except with the consent of the board of estimate and apportionment. It is unnecessary, however, to consider the validity of the provisions in question, since, even if it be assumed that they are invalid, their illegality would not invalidate the franchise itself.

A similar observation may be made in regard to the plaintiff's claim that the De Camp Coach Corporation is under contract to sell almost all of its capital stock to a New Jersey corporation. Assuming that such a contract is illegal and invalid, it does not follow that the franchise itself is likewise invalid. At the very most, the contract for the sale of the stock is unenforcible, null and void.

As to the allegation that the De Camp Coach Corporation is threatening, with or without a certificate of necessity and convenience from the transit commission, to operate buses in competition with bus routes previously awarded to the plaintiff, it is sufficient to observe that the facts alleged in the complaint indicate clearly that the plaintiff never obtained a valid franchise in respect to the routes which it claims belong to it. Section 74 of the charter expressly provides that: "The separate and additional approval of the mayor shall be necessary to the validity of every such contract or resolution." Concededly, the mayor never approved a franchise granting to the plaintiff the right to operate buses upon the routes alleged to be affected by the franchise awarded to the De Camp Coach Corporation. The facts set forth in the complaint fail to excuse the failure to obtain the mayor's approval. Franchises may not be granted by estoppel. It follows that the plaintiff "is thus in the anomalous position of seeking to prevent that which it is, itself, doing, for the indirect purpose of perpetuating its own wrongful operation. This will not do. Such a situation calls for the application of the doctrine of ' clean hands.' " (*Bee Line, Inc.*, v. *La Guardia*, 244 App. Div. 151, 156.)

The motion to dismiss the complaint is, accordingly, granted, with ten dollars costs. Order signed.