MAX BLASCHKO, Respondent, *v.* FREDERICK W. WURSTER, Mayor of the City of Brooklyn, Respondent; MARTIN F. CONLY et al., Aldermen, etc.; EAST RIVER AND ATLANTIC OCEAN RAILROAD COMPANY, Appellant.

1. NEW YORK CHARTER — RESTRICTION UPON STREET RAILROAD CONSENTS BY COMPONENT MUNICIPALITIES. The provision of section 73 of the Greater New York charter (L. 1897, ch. 378), that "After the approval of this act no franchise or right to use the streets, avenues, parkways or highways of the city shall be granted by the municipal assembly to any person or corporation for a longer period than twenty-five years," operated to restrict the power of the aldermen or city authorities within the territory comprehended within the limits of the new city thereby created, from the date of the approval of the act, May 4, 1897, and hence, from that date, deprived the local authorities of Brooklyn of power to grant a consent to operate a railroad in the streets for a period beyond twenty-five years.

2. MUNICIPAL CONSENT TO STREET RAILROAD UNLIMITED AS TO TIME. A resolution of the aldermen of Brooklyn, passed subsequently to the approval of the Greater New York charter on May 4, 1897, and before January 1, 1898, for granting consent to a railroad company to operate in certain streets, without any limitation as to time, *held,* under the circumstances of the case, not to have been a valid exercise of the power to grant consents for twenty-five years, and, hence, not good as a consent for twenty-five years.

3. APPEAL — CERTIFIED QUESTIONS. When a case not otherwise reviewable by the Court of Appeals is brought up on specific certified questions, the questions should be so framed that the answers may determine the particular controversy involved in the appeal and not merely a part of it. Where the decision below may stand upon several grounds, it is not enough that the questions certified present only the weak propositions involved in the particular ground claimed to be affected with error, ignoring all the other grounds upon which the decision may well stand.

*Blaschko* v. *Wurster,* 23 App. Div. 625, affirmed.

(Argued June 8, 1898; decided October 4, 1898.)

APPEAL, by certification, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 28, 1897, affirming an order of Special Term continuing an injunction.

The nature of the action and the facts, so far as material,

are stated in the opinion.   The questions certified for review
were as follows:

"Does section 73 of chapter 378 of the Laws of 1897
(otherwise known as the Charter of the Greater New York),
upon its approval, prevent the local authorities in the various
municipalities which will compose said city from granting a
consent to a street surface railroad company for a longer period
than twenty-five years ?   If it is held that it applies at all, does
it apply to the territory outside of the old municipality known
as the Mayor, Aldermen and Commonalty of the City of
New York before January 1, 1898 ?

"In a consent granted by the local authorities after the
approval of the Charter on May 4, 1897, and before January
1, 1898, it was stated ' that consent be, and the same is hereby,
given, pursuant to law, to the said East River and Atlantic
Ocean Railroad Company to construct, maintain and operate
a railroad upon the surface of, through and along the follow-
ing streets and avenues in said city.'   Is such a consent a
valid consent for the period of twenty-five years, if the local
authorities have power to make a consent for such a period ?"

*James C. Church* for appellant.   Section 73 of the charter
of Greater New York did not take effect until January 1,
1898; consequently, the local authorities therein were not
prevented before that time in granting a consent to a railroad,
nor is such consent limited to twenty-five years.   (L. 1897, ch.
378, § 1611; *Matter of Howe,* 112 N. Y. 100; *Staten Island
E. Co.* v. *Johnston,* N. Y. L. J., July 9, 1897; *Christopher
St. R. R. Co.* v. *Twenty-third St. R. Co.,* 149 N. Y. 51, 56;
Endlich on Stat. §§ 62, 68; Black on Interp. § 77; *Gardner*
v. *Collector,* 6 Wall. 499; Birdseye's Greater New York
Charter, 13, 34; *Davis* v. *Mayor, etc.,* 14 N. Y. 523; *Adam-
son* v. *Nassau El. R. R. Co.,* 89 Hun, 261, 268.)   Even if it
is held that section 73 applies to the city of New York as it
existed on May 4, 1897, yet it does not apply to the munici-
palities which are to become a part of Greater New York
until January 1, 1898.   (L. 1897, ch. 378, § 77.)

*M. S. Guiterman* for plaintiff, respondent. The mayor and board of aldermen of the city of Brooklyn having ceased to exist, the appeal does not now present an actual litigation, but only an abstract question. (*Gusthal* v. *Strong*, 23 App. Div. 315.) The first question involves two propositions. The first thereof should be answered in the negative, the second in the affirmative. (Birdseye's Greater New York Charter, 25.) The second question should also be answered in the negative. (*Milhau* v. *Sharp*, 27 N. Y. 611; *People* v. *O'Brien*, 111 N. Y. 1, 38.)

O'BRIEN, J. This was an action by a taxpayer to restrain the defendants, the city authorities of Brooklyn, from granting consent to operate a railroad in the streets, and the defendant the East River and Atlantic Ocean Railroad Company from receiving any such consent. A preliminary injunction was granted and the order affirmed at the Appellate Division.

The municipal authorities to whom the railroad made the application have gone out of office since the commencement of the action by force of the recent charter consolidating the two cities of New York and Brooklyn, and, consequently, are without any power to hear or grant the application, even if the injunction which restrained them had originally been improperly granted.

The railroad company alone appeals for no other purpose than to secure a reversal of the order granting the injunction as a basis for a claim of damages upon the undertaking given by the plaintiff in the action. Formerly such an order was not reviewable in this court, except in cases where it appeared from the face of the complaint that the plaintiff was not entitled to final relief. In such cases the appeal was held to present a question of law. But where the complaint on its face was sufficient to authorize the interference of equity, the granting of the order *pendente lite* was matter of discretion. (*H. R. T. Co.* v. *W. T. & R. R. Co.*, 121 N. Y. 397; *Castoriano* v. *Dupe*, 145 N. Y. 250; *Beekman* v. *Third Ave. R. R. Co.*, 153 N. Y. 144.)

The court below has, however, certified for our consideration certain questions, which, when condensed, may be stated as follows:

(1) Whether the new charter, chapter 378, section 73, Laws of 1897, when approved, deprived the local authorities of Brooklyn of power to grant such consents to a railroad for a period beyond twenty-five years.

(2) Whether a general consent that the defendant railroad might operate its road in certain streets named in the resolution without any limitation as to time, is good for twenty-five years. It appears that the aldermanic branch of the city government passed a resolution granting the consent generally, without any limitation as to time, on the 29th day of November, 1897. The resolution, however, had no effect until approved by the mayor, or, in case of his disapproval, passed over his objections by the requisite vote. It appears from the answer of the mayor that the resolution was then in his hands; that the time within which he was by law required to return it to the aldermen had not then expired, and he states that he intended to disapprove it. The railroad company is the only party that brings an appeal to this court, and it is plain that the only effect that the injunction had upon it was to restrain the aldermen, when the resolution came back to them from the mayor, from reconsidering it, or passing it over his objections. Whether it would then have been passed we cannot know, and, therefore, it is apparent that we are dealing with official acts that never reached the stage of maturity, and with questions that are somewhat academic in character. What the railroad lost by the injunction, if anything at all, was the chance of having the resolution passed by the aldermen over the veto of the mayor.

Without scanning too closely the right of the railroad company alone to review the order in this court, in the present condition of the action, we have concluded, since no such question has been raised or argued, to examine and dispose of the questions certified.

The new charter was approved on the 4th day of May,

1897, before the resolution granting the franchise in question was passed. Section 73 of this statute is as follows: " Sec. 73. After the approval of this act no franchise or right to use the streets, avenues, parkways or highways of the city shall be granted by the municipal assembly to any person or corporation for a longer period than twenty-five years." The city referred to in this clause was, of course, the new city created by the act, and the prohibition applies to all the territory embraced within it, and consequently applied to Brooklyn. But the learned counsel for the railroad company contends that this restriction did not take effect until January 1st, 1898, and, therefore, had no application to proceedings for granting franchises before that date. This contention is based upon the language of section 1611 of the act which reads as follows: " Sec. 1611. For the purpose of determining the effect of this act upon other acts and the effect of other acts upon this act, this act shall, except as in this section is otherwise provided, be deemed to have been enacted on the first day of January, in the year eighteen hundred and ninety-eight. This act shall take effect on the first day of January, eighteen hundred and ninety-eight; provided, however, that where by the terms of this act an election is provided or required to be held or other act done or forbidden prior to January first, eighteen hundred and ninety-eight, then as to such election and such acts, this act shall take effect from and after its passage, and shall be in force immediately, anything in this chapter or act to the contrary notwithstanding."

By this section it is undoubtedly true that the main provisions of the statute did not go into effect until January 1st, 1898, but to this there is an important exception. Any official act forbidden to be done prior to that date is prohibited from and after the date of the passage of the act, and the granting of street franchises to railroads by the municipal assembly for more than twenty-five years is one of these forbidden acts. But it is said that the "municipal assembly" was a title given by the charter to the new legislative body which could not come into existence until after the election and until

January 1, 1898, and therefore, that the prohibition upon that body could have no application to the old board of aldermen of Brooklyn in office when the franchise was voted, having still about a month of official life.

This argument gives too much importance to mere names or words, and fails to give effect to the substantial purpose which the lawmakers had in view. It was clearly intended by section 73 to restrict the granting of railroad franchises "after the approval of this act," that is to say, after May 4th, 1897. This restriction to be effective would have to operate on the city authorities having the power to make such grants on that date, and up to the time that the municipal assembly came into existence. We think that the words "municipal assembly," found so frequently in the new charter, were employed in section 73 to designate the aldermen, common council or governing body having the power to deal with the subject-matter of the restriction prior to the date when the new government was to go into full operation, and, therefore, that the restriction applied to the board of aldermen of Brooklyn when the resolution in question was adopted.

The new charter contains a comprehensive and elaborate scheme of municipal government. Many of the reforms which it is supposed to have inaugurated could be defeated or greatly embarrassed by official action, before it went into effect, on the part of the old authorities whose powers were about to be taken away and superseded by the new enactment. In order to guard against that the restriction upon the power to grant railroad franchises, except as provided in the new scheme, was restricted as of the date of the passage of the act. The fact that the lawmakers used terms perhaps not strictly accurate is of very little consequence, so long as the intention is plain. If the word "authorities" had been used instead of "assembly," no one could then suggest any doubt as to the meaning. The use of a wrong word, conceding it to be such, which was doubtless an inadvertence, should not be allowed to defeat the intention of the law. When the intention of the lawmakers is discovered it must always pre-

vail over the literal or accepted meaning of words. The courts will consider the mischief which the statute was aimed at, and in order to give it effect words absolute in themselves, and language the most broad and comprehensive, may be qualified and restricted by other parts of the same statute, or by the facts and circumstances to which they relate. (*Smith* v. *People*, 47 N. Y. 330 ; *People ex rel. Jackson* v. *Potter*, Id. 375.)

It follows that the new charter operated to restrict the power of the aldermen or city authorities within the territory comprehended within the limits of the new city thereby created, and this answers the first question in all its parts.

The other question is whether the proceedings had in this case before the city authorities were within the scope of the powers thus limited by the charter. In other words, whether the inchoate acts of the aldermen should now be declared valid, as relating only to a grant for twenty-five years, in order to make the injunction order improper. The railroad made no application for such a grant. We cannot say now that the aldermen would have adopted any resolution granting any such right, or that the railroad would have accepted it. What the railroad asked, and what the aldermen voted, was the right in perpetuity. All parties evidently acted upon the assumption that the restrictions of the new charter were in abeyance till the new government went into operation, and to give now a construction to their acts contrary to the intention, and solely on the principle that the greater must include the less, would be straining for reasons to reverse or modify the order. When it is avowed that the appeal is brought in order to lay the foundation for a claim of damages against the sureties on the bond, the railroad has no right to a construction of the consent or resolution different from the intention of all the parties when the application was considered and passed upon. We ought, under the peculiar circumstances of the case, to construe the consent in the same way as the parties themselves did when it was asked and given. We are not dealing with a grant actually made and in form perfected, but with an application that had not reached the final stage of municipal action

when the injunction was served. The city authorities had the power to make the grant for twenty-five years, but that was not the power that the railroad called into action, that the aldermen exercised or the court restrained, but the unlimited power invoked and claimed independent of the new charter. We should construe the official act which the court restrained according to the spirit and intention with which it was performed, and in the sense in which it was viewed and understood by the court when the injunction was granted.

So we are inclined to hold that the consent, so far as it was given, was not a valid exercise of the power to grant consents for twenty-five years, and, therefore, the second question should be answered in the negative.

There is another feature of the case which we think ought to be suggested in view of the abstract character of the questions that have been sent here, and are now becoming quite common. After the case had been passed upon by the court below no question remained for this court except the jurisdiction of the judge to grant the injunction upon the facts stated in the complaint. The complaint is broad enough to embrace a case of illegal action on the part of the railroad and the aldermen, quite independent of the restrictions of the new charter. The right of a taxpayer to restrain illegal, fraudulent or corrupt action on the part of the city authorities in such cases has existed for many years, and the complaint does not rest solely upon the restrictions of the new charter, but contains allegations that would warrant an injunction under the law as it had long existed. We have not by the specific questions been asked to decide the only question that this court can decide in such cases, namely, the power of the court of original jurisdiction to grant the injunction order. The railroad asks a reversal of the order in case it should be held that the restriction in the charter was not in force when it was granted, whatever we may think about the power to grant it on other grounds. The whole case upon which the order may rest is not presented by the specific questions, and yet we are asked to reverse the order

should we agree with the learned counsel for the appellant upon one point in the case that ordinarily would not determine the appeal. Certain questions have been sent here which are supposed to be involved, but which if determined in favor of the contention of the appellant would not necessarily call for a reversal of the order, since it is clear that if the allegations of the complaint are sufficient to warrant the exercise of the jurisdiction of the court to grant the injunction under the general law authorizing taxpayers' actions, it is not important whether the aldermen acted in violation of the restrictions of the new charter or not. A complaint containing, as this does, general allegations of waste, illegal, corrupt or fraudulent official action is sufficient in this court to sustain the jurisdiction to grant the injunction order, quite independently of the charter provisions referred to. Hence it is apparent that the questions we have been called upon to examine do not necessarily determine the appeal. A judgment or an order may have been given or made upon several grounds, one of which may be incorrect, while all the rest are good. The practice adopted in this case would permit the party defeated in the court below to pick out all the weak propositions involved in the particular ground affected with error, ignoring all the other grounds, present them here for review, and ask us to reverse the judgment or order in case we agree with him in respect to this single ground, although the decision below may stand well upon all the other grounds.

The spirit and purpose of the provisions of the Constitution and the Code authorizing the courts below to send appeals here upon special questions, do not permit this practice and it ought not to be sanctioned. When a case is sent here upon special questions that otherwise is not reviewable, the questions should be so framed that the answers may determine the particular controversy involved in the appeal, and not merely a part of it. We have before us an injunction order which might have been made under two different statutes, and, as we think, stands well upon both, so far as the jurisdiction of the court is concerned. But the questions submitted touch only the

power to grant it under one of the statutes. Suppose we should agree with the learned counsel for the appellant that the restriction of the new charter does not apply, would we be bound to reverse the order, although the complaint is broad enough to uphold the jurisdiction under the general law ? The construction that we have given the charter renders it unnecessary to answer this question, but in view of the form in which appeals are brought here upon certified questions, in many cases, what has been said may serve to call the attention of the profession to the importance of so framing the questions that when answered something material and essential to the controversy involved in the appeal shall have been decided by this court.

The order appealed from should be affirmed, with costs, and the questions answered as above indicated.

PARKER, Ch. J., GRAY and HAIGHT, JJ., concur; MARTIN, J., concurs in result as per memorandum attached; BARTLETT and VANN, JJ., are for dismissal of appeal.

Order affirmed.

MARTIN, J. I vote for an affirmance of the order, upon the ground that, independently of the charter of Greater New York, the complaint and proceedings in this action were sufficient to justify the court below in granting the order appealed from. But, as the questions certified, if decided in favor of the appellant, would not authorize a reversal of the order, I think they are in effect mere abstract questions which this court should decline to answer. (*Grannan* v. *Westchester Racing Assn.,* 153 N. Y. 449; *Baxter* v. *McDonnell,* 154 N. Y. 432; *Hearst* v. *Shea,* 156 N. Y. 169; *Schenck* v. *Barnes,* 156 N. Y. 316; *Coatsworth* v. *Lehigh Valley R. Co.,* 156 N. Y. 451.)