CITY BANK FARMERS' TRUST COMPANY, as Executor of FRANCIS T. KING, Deceased, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

50

(Argued January 17, 1930; decided February 11, 1930.)

*William Mann* and *Charles C. Paulding* for appellant. The reciprocity section of article 10-A (L. 1925, ch. 143), is not severable from the invalid parts of said statute. (*Smith* v. *Loughman*, 245 N. Y. 486; *Rathbone* v. *Wirth*, 150 N. Y. 459; *Duryee* v. *Mayor*, 96 N. Y. 477; *People ex rel. Alpha Co.* v. *Knapp*, 230 N. Y. 48; *Lawton* v. *Steele*, 119 N. Y. 227; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Williams* v. *Standard Oil Co.*, 278 U. S. 235; *Williams* v. *State*, 125 Atl. Rep. 661; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Dollar Co.* v. *Canadian C. & F. Co.*, 220 N. Y. 270; *Commonwealth of Pennsylvania* v. *Farmers Loan & Trust Co.*, 147 Atl. Rep. 71.)

*Charles Angulo* and *James D. Ouchterloney* for respondent. The provisions of the New York Tax Law relating to reciprocity are entirely separable from the provisions relating to the Matthews flat-rate plan, and, therefore,

the former remained in effect notwithstanding the invalidity of the latter. (*Matter of Village of Middletown*, 82 N. Y. 196; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *People ex rel. Alpha Portland Cement Co.* v. *Knapp*, 230 N. Y. 48; *Dollar Co.* v. *Canadian C. & F. Co.*, 220 N. Y. 270.) The legislative intent must prevail over the literal meaning of words. (*Bell* v. *Mayor*, 105 N. Y. 139; *People ex rel. Jackson* v. *Potter*, 47 N. Y. 375; *Curtis* v. *Stovin*, [1889] 92 Q. B. D. 513; *Blaschko* v. *Wurster*, 156 N. Y. 437.) Even if Laws of 1925, chapter 143, was wholly void, Laws of 1926, chapter 509, re-enacting the reciprocity section, would be valid and effective as an independent statute. (*Columbia Wire Co.* v. *Boyce*, 104 Fed. Rep. 172; *Beatrice* v. *Masslich*, 108 Fed. Rep. 743; *State* v. *Silver Bow Refining Co.*, 252 Pac. Rep. 301; *People ex rel. Strough* v. *Board of Canvassers*, 143 N. Y. 84.) The 1928 legislation (Laws of 1928, ch. 330) does not affect the question involved in the present case. (*Matter of Pell*, 171 N. Y. 48; *Matter of Lansing*, 182 N. Y. 238; *Matter of Lyon*, 233 N. Y. 208; *Matter of Pettit*, 65 App. Div. 30; 171 N. Y. 654; *Matter of Craig*, 97 App. Div. 289; 181 N. Y. 551; *Matter of Embury*, 154 N. Y. 746; *Matter of Vanderbilt*, 172 N. Y. 69; *Matter of Slosson*, 216 N. Y. 79; *Matter of McKelway*, 221 N. Y. 15; *Matter of Smith*, 150 App. Div. 805; *Matter of Chapman*, 133 App. Div. 337; *Matter of Meyer*, 83 App. Div. 381; *Matter of Haight*, 152 App. Div. 228.)

*Hamilton Ward*, Attorney-General (*Amos D. Moscrip* and *Henry S. Manley* of counsel), for the State of New York, *amicus curiæ*.

*Francis Smyth* for The Farmers' Loan and Trust Company, as executor of Henry R. Taylor, deceased, *amicus curiæ*.

*Cyrus E. Woods*, Attorney-General (*Philip S. Moyer* and *Alfred Yankauer* of counsel), for Commonwealth of Pennsylvania, *amicus curiæ*.

CARDOZO, Ch. J. The plaintiff, the executor of the will of Francis T. King, has sought and obtained a declaratory judgment whereby the defendant, the New York Central Railroad Company, is found to be subject to a duty to transfer shares of stock forming part of the estate of the testator without exacting proof of the payment of transfer taxes thereon to the Commonwealth of Pennsylvania.

Plaintiff's testator died on August 4, 1927, a resident of the State of New York. Included in his estate was a certificate for 100 shares of the stock of the New York Central Railroad Company, which is a domestic corporation, but is also incorporated under the laws of Pennsylvania and other States. The plaintiff presented this certificate to the defendant at a transfer office in New York, and requested that it be transferred upon the corporate books to the name of the plaintiff as executor of the will. The defendant, believing the stock to be subject to the payment of a tax under the laws of Pennsylvania, declined to make the transfer without the waiver or consent of the Commonwealth of Pennsylvania by its Auditor-General. This action was brought to declare the rights of the parties as to the matters in controversy.

Pennsylvania, though imposing a tax upon the transfer by will of shares belonging to non-residents in Pennsylvania corporations, is one of a group of States subjecting such transfers to the rule of reciprocity.

" Personal property of a nonresident decedent made taxable under this section shall not be subject to the tax so imposed if a like exemption is made by the laws of the state or country of the decedent's residence in favor of residents of this Commonwealth " (Pennsylvania Inheritance Tax Law, as amended by act of May 14, 1925, P. L. 717, 718).

New York announced its adherence to the rule of reciprocity by a statute effective July 1, 1925 (Laws of

1925, ch. 143). The section embodying the change was part of a revision of the Tax Law (Cons. Laws, ch. 60), and was numbered 248-p. In July, 1927, other sections of the statute were adjudged void by this court as in con-flict with limitations of the Federal Constitution (*Smith* v. *Loughman*, 245 N. Y. 486; certiorari denied, 275 U. S. 560). The defendant insists that the section embodying the rule of reciprocity fell with those condemned. The plaintiff insists that it may be severed from the void, and through such severance survives.

Until the adoption of the act of 1925, transfer taxes upon the estates of residents and non-residents were regulated in New York by a single article of the Tax Law which was designated 10. Two reforms had been advocated by students of finance. Each was designed to correct abuses that had developed in the collection of taxes from the estates of non-residents. The one, known as the Matthews plan, was proposed in 1921 at a meeting of the National Conference of the National Tax Associa-tion. By this the representatives of non-resident estates might elect to pay a flat rate upon the gross amount of the taxable property in States other than the domicile. They would save thereby the expense and annoyance of a computation of the net value in foreign jurisdictions (cf. *Smith* v. *Loughman, supra*, pp. 489, 490). The other plan, known as the reciprocity movement, had its origin at a meeting of the same association in 1924. By this it was proposed that taxes upon transfers by non-residents be abolished altogether, at least as to intangibles, in return for a reciprocal exemption at the jurisdiction of the domicile. The movement spread apace, accelerated by a growing sense of the evils of multiple taxation (cf. *Farmers' Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204, per McREY-NOLDS, J.). We find a statement in the briefs that, in one form or another, provision has been made for reciprocal exemptions in thirty-seven States. Even between foreign countries there is a movement in the same direction.

New York in 1925 attempted to enact into law both measures of reform, the Matthews plan for a simplified assessment, and the plan for the adoption of the rule of reciprocity. We summarized in *Smith* v. *Loughman* (*supra*) the scheme of the revision. The tax upon transfers by will or intestate succession where the owner of the property was at death a resident of the State, was to be governed by article 10. It was substantially what it had been before. The tax upon transfers by non-residents was to be governed by a new article, known as 10-A. Sections 248 to 248-o prescribe the method of assessment to be followed when a tax is to be laid. Section 248-p prescribes a rule of reciprocity whereby taxation is renounced. We quote it for greater certainty:

" § 248-p. Reciprocity. The tax imposed by this article in respect of personal property (except tangible personal property having an actual situs in this state) shall not be payable (1) if the transferor is a resident of a state or territory of the United States which at the time of the transfer did not impose a transfer tax or death tax of any character in respect of personal property of residents of this state (except tangible personal property having an actual situs in such state or territory) or (2) if the laws of the state or territory of residence of the transferor at the time of the transfer contained a reciprocal provision under which nonresidents were exempted from transfer taxes or death taxes of every character in respect of personal property (except tangible personal property having an actual situs therein) providing the state or territory of residence of such nonresidents allowed a similar exemption to residents of the state or territory of residence of such transferor. For the purposes of this section the District of Columbia shall be considered a territory of the United States."

Nothing decided or suggested in *Smith* v. *Loughman* (*supra*) has any bearing upon the binding force of this rule of reciprocity. We held that the sections of the

new article fixing the rate of the tax upon transfers by non-residents were in violation of article IV, section 2, of the Federal Constitution, since the rate in many instances was higher for non-residents than it was for residents. This was hostile discrimination at war with the declaration of the Constitution that the citizens of each State shall be entitled to the privileges and immunities of citizens in the several States. We did not hold, and the reason of the decision does not support a holding, that there is any infirmity in a statute whereby a citizen of another State, instead of being subjected to burdens heavier than those of residents, is declared under the rule of reciprocity to be exempt from taxes altogether. The spheres of thought are independent. They do not even overlap.

We think the failure of those sections of the revision of 1925 which define the tax to be imposed upon transfers by residents of other States not adhering to the rule of reciprocity, does not involve the failure of the section which says that in respect of transfers of intangibles by residents of other States adhering to that rule there shall be no tax in any amount. The provisions are severable, and one can stand without the other (*People ex rel. Alpha Portland Cement Co.* v. *Knapp*, 230 N. Y. 48, 60; *Field* v. *Clark*, 143 U. S. 649, 696; *Loeb* v. *Columbia Township Trustees*, 179 U. S. 472, 490; *El Paso & N. E. Ry. Co.* v. *Gutierrez*, 215 U. S. 87, 96, 97). Clearly this is so if we view the parts of the statute without reference to verbal niceties, but rather in their logical relation as means directed to an end. One set of sections is aimed at residents of those States that have failed to give effect by their laws to the rule of reciprocity. The other section is aimed at residents of other States, the members of the group where reciprocity prevails. There is no sensible reason why a change in the tax to be paid by residents of the one group should destroy an exemption enjoyed by residents of the other. This being so, it is

plain that severance must follow unless the Legislature has said in terms too clear for misconstruction that none shall be permitted.

We are told by the appellants that this is what was done. The burden of their argument is cast upon the opening words (§ 248-p). The opening words are that the tax " imposed by this article " shall not be payable if the domiciliary State allows a reciprocal exemption. The argument runs thus: the tax " imposed by this article " has failed; a tax at another rate is now exacted in its place; that being so, the exemption has failed too, for by the terms of the statute it is to be an exemption from a particular tax, and not from any other. We think a reading so literal does violence to intention. The conclusion is not to be avoided, when we mark the history of the movement, that the reciprocal exemptions were not to depend for their continuance upon the rates prevailing from time to time beyond the zone of reciprocity. The very purpose of the exemptions was the creation of a zone in which such things would be irrelevant. Rates might go up or down in their application to States adhering to the old order. The mutations were to be of no concern for States adhering to the new. It is in the light of the end to be attained that the tax " imposed by this article " must receive its definition. The situation is much the same as if the sections held to be unconstitutional had been transferred to another article by an amendatory act, leaving section 248-p standing by itself. If this had happened, no one would be likely to urge that the section so left would be repealed by implication. The effect of our decision is no greater than the effect to be ascribed to an amendatory statute. In the one case as in the other, the subject-matter of the exemption is no longer described with precision by the number of the article, yet described in other ways. The number is 10-A, but beneath the number is the heading " taxable transfers; non-residents," to indicate the kind of tax to

which the article is dedicated. Here is the key to the subject-matter envisaged by the rule of reciprocity. The key does not fail when we pass beyond the heading of the article to the sections embraced within it. First in order is section 248, which declares the transfers that are subject to taxation in the absence of reciprocal exemption, and "imposes" a tax upon them. There is not one of these transfers that was not already subject to taxation under article 10 of the act at the time of the revision. What was formerly in one article had been transported into another. Not till we reach section 248-b with its enumeration of the rates is there any change except of form. There indeed the change ends. What follows, even if different, is procedure and machinery.

We think the conclusion is imperative that the " tax imposed by this article " is merely a convenient and compendious substitute for " the tax imposed by this act," i. e., the general Tax Law of the State, " upon transfers by non-residents." In the construction of a statute, adherence to the written word will not be suffered to " defeat the general purpose and manifest policy intended to be promoted " (Spencer v. Myers, 150 N. Y. 269, 275; Surace v. Danna, 248 N. Y. 18, 20). The intent, when discovered, will prevail over the letter (Smith v. People, 47 N. Y. 330, 336; People ex rel. Jackson v. Potter, 47 N. Y. 375, 379; Bell v. Mayor, 105 N. Y. 139, 144; Blaschko v. Wurster, 156 N. Y. 437, 442).

We have considered till now the act of 1925, standing by itself, and without reference to the complications ensuing from later legislation. Upon the decision of Smith v. Loughman in July, 1927, the State Tax Commission was advised by the Attorney-General of the State that transfers by residents and non-residents were thereafter to be taxed under the rates that had been in force before the revision of the statute. The Commission interpreted that advice to mean that the reciprocity section had fallen with the others, and so notified the

taxing officers in the States other than our own which allowed reciprocal exemptions. Upon receipt of that notice, the Auditor-General of Pennsylvania proceeded to enforce the tax against residents of New York holding intangible property in Pennsylvania, and the Tax Commission of New York proceeded to enforce the tax against residents of Pennsylvania holding intangible property in New York. The Legislature came to the rescue with a statute adopted March 12, 1928 (Laws of 1928, ch. 330). As to transfers by non-residents to be made in the future, it re-enacted article 10-A of the act of 1925, including section 248-p, with amendments intended to give protection against adverse discrimination. Non-residents might elect to be taxed at a flat rate of two per cent, but they were to be subject to no greater burden than that applicable to residents (§ 248-b; Laws of 1928, ch. 330). There were, however, separate sections (Laws of 1928, ch. 330, §§ 6, 11, 12) that were aimed to bridge the period between July 1, 1925, and March 12, 1928. A tax similar to the one imposed by the new statute upon transfers to be made thereafter was imposed retroactively upon transfers already made between the dates stated (§ 6). If the burden so laid was found to be unconstitutional, or failed for other cause, then the tax was to be assessed under the statutes previously in force (§ 12). The reciprocity clause was also re-enacted as applied to the tax thus retroactively imposed, but subject to a proviso (§ 11). The proviso was this, that there was to be no refund of the taxes that had been collected by the Commission upon transfers by non-residents in the belief that the reciprocity section of the act of 1925 had fallen with the section condemned in *Smith* v. *Loughman,* unless the laws of the State of such non-resident transferors made provision for the refund of like taxes collected by them upon transfers by residents of New York. More concretely, New York would not refund to Pennsylvania unless Pennsylvania made pro-

vision to refund to New York. Not only was there to be no refund, unless this condition was complied with, but the non-residents in such circumstances were declared to have lost any privilege of reciprocal exemption and to be subject to the tax. In aid of greater certainty, we quote the clause in full (Laws of 1928, ch. 330, § 11):

" § 11. There shall be refunded pursuant to the provisions of section two hundred and forty-eight-f of the tax law, as enacted by this act, any taxes heretofore collected pursuant to the provisions of article ten of the tax law upon estates of decedents entitled to exemption from tax under the reciprocity provisions contained in section two hundred and forty-eight-p of the tax law, as enacted and made retroactive by this act; provided, however, that no such refunds shall be made in the case of estates of decedents which otherwise would be entitled to reciprocal exemptions if the state or states of residence of such decedents shall assert a tax against estates of decedents residents of this state dying during the period in which the law of such state or states has contained a reciprocal provision, or, having collected taxes upon estates of decedents residents of this state dying during said period, shall not make provision for the refunding of the same, but in all such cases estates of decedents residents of such states dying during said period and prior to the time this act takes effect, shall not be entitled to reciprocal exemptions but shall be taxable under article ten-a of the tax law as enacted and made retroactive by this act."

We have seen that the reciprocity section (248-p) of the act of 1925 was untouched by the fall of the sections which prescribed the rate of tax where there were no reciprocal exemptions. This being so, an act of the Legislature attempting to revoke the exemption in respect of past transactions would be a denial of " due process," and so of no effect (*Matter of Pell*, 171 N. Y. 48; *Matter*

*of Lansing*, 182 N. Y. 238; *Matter of Pettit*, 65 App. Div. 30; 171 N. Y. 654; *Matter of Craig*, 97 App. Div. 289; 181 N. Y. 551; *Matter of Schmidlapp*, 236 N. Y. 278, 285; *Untermyer* v. *Anderson*, 276 U. S. 440). A different question would be here if all that had been canceled were the duty laid upon the Comptroller (§ 248-f) to refund any taxes found by the Commission to have been erroneously collected, or if the duty had been limited to cases of payment under compulsion. In many instances a sufficient remedy would still be left under another section of the Tax Law (§ 225, Laws of 1909, ch. 62) when the validity of the collection had been seasonably challenged. The Legislature did not confine itself, however, to a modification of the remedy. The denial of the refund was coupled with a denial of the right to the exemption, whether payment had been made or not. The two are so tied together that either in its overthrow will drag the other down with it. There is a single fiat of confiscation which must stand or fall as one.

We speak of confiscation, for such was the effect, yet we have no thought that the Legislature would have been willing to give assent to confiscation, if the effect had been foreseen. In revoking the exemption, it was acting in the erroneous belief, induced, beyond doubt, by the advice of the Commission, that between July, 1925, and March, 1928, there was no rule of reciprocity in force in this State. Given that premise, the conclusion, otherwise a harsh one, takes on another aspect. If there was no rule of reciprocity in force at those times, the Legislature might fairly say that it would not create one by retroaction except on its own terms. It might say for the same reason that if taxes had been collected from residents of Pennsylvania and others similarly situated, there was nothing in equity and good conscience that would impose an obligation to pay the money back. What it said must be interpreted in the light of what it thought. We are not at liberty to believe that if there had

been knowledge of the exemption, there would have been repudiation of the duty or obstruction of performance.

The case comes down to this: since July 1, 1925, transfers of intangibles by residents of Pennsylvania have been immune from taxation in this State by force of the rule of reciprocity, and taxes erroneously collected, if payment was seasonably challenged (Tax Law [Laws of 1909, ch. 62], § 225; [Laws of 1925, ch. 143], § 248-f), have been subject to be refunded through appropriate proceedings. The rule of reciprocity did not expire in New York at the behest of the State Tax Commission, an administrative board, any more than it expired in Pennsylvania at the behest of the Auditor-General, an administrative officer. New York, having become a member of the group of " reciprocity " States, was free, at the pleasure of its Legislature, to withdraw from the group in respect of transfers to be made thereafter. It could not do so retroactively. The reciprocity movement would be stifled in its infancy if such a right should be conceded. Whatever immunity existed when the transfer became effective, continued to exist thereafter, untouched in its integrity by anything that the Legislature could do.

These views would lead us to an affirmance of the declaratory judgment which applied to this transfer the rule of reciprocity, were it not for a recent judgment of the Supreme Court of Pennsylvania. In *Commonwealth* v. *Taylor* (May, 1929, 297 Penn. St. 335), that court decided that a transfer of intangible property in Pennsylvania, belonging to a testator domiciled in New York, was subject to taxation under the statute of Pennsylvania if the death of the testator occurred between July 1, 1925, and March 12, 1928, on the ground that between those dates there was no reciprocal exemption in New York within the meaning and intent of the Pennsylvania law. The court did not attempt to pass upon the question whether section 248-p of the act of 1925 had fallen with the section or sections

condemned as unconstitutional in *Smith* v. *Loughman* (*supra*). It observed that only this court could pass upon that question with finality. It held, however, that by reason of the retroactive provisions of the act of 1928, the act of 1925, even if severable, would not determine the result.

" Under their Act of 1928, New York will not refund the transfer inheritance taxes collected by it from estates of Pennsylvania decedents, who died between July 1, 1925, and March 12, 1928, unless we make provision for the return of the transfer inheritance taxes collected by us from the estates of New York decedents who died between those dates. Such a provision cannot be made by this Commonwealth, save by a statute. Such legislation has not been enacted, and may never be; a bill to that end was presented to the last legislature, but was not passed by it. Hence, as actual reciprocity is that for which the statutes of both states attempt to provide, not an unenforceable right to reciprocity, which is what defendant claims already exists, our taxing authorities should continue to collect such transfer inheritance taxes from the estates of New York decedents who died between the dates stated, until our legislature chooses to make provision for the return of the taxes collected by us from the estates of New York decedents who died between these dates."

The conclusion thus stated is based on the assumption that by force of the act of 1928 there was an effective withdrawal by retroaction of the rule of reciprocity. The court did not examine the question whether the withdrawal of the exemption was a denial of due process under the Federal Constitution. It did not go beyond the administrative practice, established by the ruling of the State Tax Commission, and the legislative policy, declared, with at least presumptive validity, by the mandate of a statute. Finding in these a denial of the rule of reciprocity, it held that within the meaning of the statute of

Pennsylvania there was no reciprocal exemption by " the laws " of New York.

The court announcing that conclusion speaks with final authority as to the law of the Commonwealth of Pennsylvania. Whether it would have reached the same result if at the time of its decision the act of 1928 had already been condemned as void by a judgment of this court, we make no attempt to say. Its careful opinion seizes with precision upon the test to be applied, and states it in a few words with directness and simplicity. "An actual reciprocity is that for which the statutes of both states attempt to provide, not an unenforceable right to reciprocity." Actual reciprocity, however, is not destroyed by the failure of administrative officers to execute a law in the mistaken belief that it has ceased to bind them. They may be compelled to do their duty. Actual reciprocity in the year 1927 is not destroyed by an unconstitutional attempt in the year 1928 to withdraw the rule of reciprocity by retroactive legislation. The attempt is but a gesture, and the legislation a nullity.

The judgment before us may not stand while the judgment of the Supreme Court of Pennsylvania is standing unchanged. That judgment, right or wrong, decides the whole issue. The issue is merely this: do the laws of Pennsylvania, properly interpreted, impose a tax upon the plaintiff's shares of stock in a Pennsylvania corporation? The Supreme Court of Pennsylvania has said that they do. In reaching that conclusion it has had occasion to consider the meaning and effect of the statutes of New York. What it has said in that regard does not constitute its decision. What it has said in that regard is a step in the process of reasoning leading up to the decision. In the end it has determined, not the meaning and effect of the statutes of New York, but the meaning and effect of the statutes of Pennsylvania. As to that, as we have said, its authority is final.

Whether the certificate of stock in the defendant cor-

poration had such a situs in Pennsylvania as would subject it to taxation in that State, apart altogether from any rule of reciprocity (*Farmers' Loan & Trust Co.* v. *Minnesota, supra; Frick* v. *Pennsylvania,* 268 U. S. 473, 497), is a question not before us, since it was not raised in the courts below, nor was any declaratory judgment sought with reference thereto. The record does not inform us whether the certificate was used in connection with a business localized in Pennsylvania, nor even where it was kept, if that be now important (*Blodgett* v. *Silberman,* 277 U. S. 1, 14; *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395; *Wheeler* v. *New York,* 233 U. S. 434; *Iowa* v. *Slimmer,* 248 U. S. 115). The case is here on the assumption that the tax must be paid if reciprocity has failed.

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial granted, with costs to abide the event.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.