In the Matter of the Application of ARTHUR J. BAER, Coexecutor under the Last Will and Testament of JOSEPH BAER, Deceased, Petitioner, for a Mandamus Order against MARK GRAVES, President of the State Tax Commission, and Others, Respondents.

Supreme Court, Albany County, August 1, 1933.

*Joseph F. McCloy,* for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Seth T. Cole* of counsel], for the respondents.

SCHENCK, J. This is an application for a peremptory mandamus order directing the Tax Commission to determine that a transfer tax amounting to the sum of $415.91 be refunded.

The decedent, a resident of the State of Illinois, died on the 28th day of January, 1927. On the 25th day of March, 1927, the sum of $415.91 transfer tax was paid to the State of New York, that being the tax assessed upon the transfer of 220 shares of common stock of the Union Carbide and Carbon Corporation. This stock was owned by decedent at the time of his death.

The Union Carbide and Carbon Corporation was a New York corporation. The assessment was made pursuant to article 10-A of the Tax Law, which imposed a transfer tax upon a transfer by a non-resident of stock in a corporation organized under the laws of this State.

In 1925, the Transfer Tax Laws of this State were amended with respect to non-residents in two important particulars. The Legislature by chapter 143 of the Laws of 1925 adopted the flat rate plan which imposed upon non-residents a flat rate upon the gross amount of the taxable property within the State. The Legislature also adopted provisions for reciprocity in its inheritance taxation. It exempted from the New York inheritance tax the property of non-residents whose States of residence granted similar exemptions to estates of New York residents.

Section 248-f of article 10-A of the 1925 statute provided that whenever the Tax Commission shall determine that any tax collected under the provision of that article has been erroneously collected, the amount so determined should be refunded without interest out of the funds in the custody of the Comptroller to the credit of such taxes. (*City Bank Farmers' Trust Co.* v. *New York Central R. R. Co.*, 253 N. Y. 49.)

Article 10-A was declared unconstitutional in *Smith* v. *Loughman* (245 N. Y. 486; certiorari denied, 275 U. S. 560).

It was there held that article 10-A violated article IV, section 2, of the Federal Constitution, because, in many instances, the rate of the tax was higher for non-residents than for residents, and thus there was a hostile discrimination, contrary to the declaration of the Constitution that the citizens of each State shall be entitled to the privileges and immunities of citizens in the several States.

*Smith* v. *Loughman* was decided in 1927. The Tax Commission then took the position, upon the advice of the Attorney-General (1927 Report, p. 247), that transfers by residents and non-residents were thereafter to be taxed under the rates that had been enforced before the revision of the statute. The Attorney-General said: " Prior to the enactment of Chapter 143 of [the Laws of] 1925 the Transfer Tax Law of this State was Tax Law, article 10, applicable both to resident and nonresident estates. The main purpose

of the 1925 amendment is clear upon an examination of the amending bill (Assembly print numbers 858, 1414; Senate 608, 1927) and is further attested by your recommendations for the amendment (1924 Report of State Tax Commission, pages 19–21). That purpose was to provide a different measure of tax, known as the Matthews flat-rate plan, as against nonresident estates, together with different methods of assessment and collection, and to retain the former tax for resident estates only.

" To effectuate that main purpose former article 10 was amended by appropriate retitling to indicate that it applied to resident estates only, and by striking out certain provisions peculiarly applicable to nonresident estates. With a few minor exceptions all the changes were clearly related to the main purpose of amendment. Two sections of the former article were repealed, clearly in pursuance of the main purpose. Its setting having thus been prepared, the new tax provision for nonresident estates was enacted as article 10-a.

" The recent decision of the Court of Appeals proclaims that the amendment, as to its main purpose, proceeded upon a principle that brings it into collision with the Constitution. Accepting that decision as your present rule of administration, I advise you that not only does article 10-a fail, but also so much more of Chapter 143 of 1925 as was incidental and subservient to the main purpose of enacting article 10-a, including the provisions amending article 10 by making it inapplicable to nonresident estates. Article 10 as it existed before amendment, and continuing except as amended in pursuance of separate and constitutionally valid purposes, remains, as the law of this State, imposing a death tax upon devolutions from nonresident decedents."

The Tax Commission took the position that the reciprocity provisions of the 1929 statute were invalid because of the unconstitutionality of the rate provision. The following statement was made by the Tax Commission under date of August 4, 1927:

" RECIPROCAL RELATIONS WITH OTHER STATES.

" Perhaps the most regrettable result of the decision is the disturbance of the reciprocity plan under which twenty-two states have joined in an agreement whereby as among them multiple taxation of intangible personal property of non-resident decedents is eliminated. The conclusion seems inescapable that the decision is broad enough to render Chapter 143 of the laws of 1925 invalid in its entirety and this carries with it the provisions for reciprocal death tax exemptions. Unfortunately residents of New York, for a time at least, will find themselves again enmeshed in the per-

nicious multiple death tax network, and it is with great reluctance that the tax commission is impelled to deny reciprocity to the estates of residents of the twenty-one other jurisdictions with which New York has been working in accord."

Later, in 1930, the Court of Appeals, in *City Bank Farmers' Trust Co.* v. *New York Central R. R. Co.* (253 N. Y. 49), held that the reciprocity provisions of the 1925 Act were valid.

These provisions are not involved here.

In 1928 the Legislature, by chapter 330 of the Laws of 1928, re-enacted article 10-A of the 1925 act, with amendments designed to remove the constitutional objections as to discriminatory rates against non-residents. The reciprocity provisions were also amended.

By the 1928 statute, article 10-A, as re-enacted and amended, was made retroactive to July 1, 1926, and the tax thereunder was declared to be in lieu and instead of the tax imposed upon transfers by non-residents, under the 1925 article 10-A.

The Court of Appeals has held that the retroactive taxing feature of the 1928 act is invalid, but the procedural provisions are not, and that the taxing features of the 1925 act were revived. (*Matter of Nash* v. *Lynch*, 226 App. Div. 421; affd., 253 N. Y. 564.) (See, also, *Matter of Caulfield*, 136 Misc. 685.)

Section 248-f of article 10-A of the act of 1928 contained a similar provision to the 1925 act as follows: " Whenever the tax commission shall determine that any tax collected under the provisions of this article has been erroneously collected, the amount so determined shall be refunded, without interest, out of the funds in the custody of the comptroller to the credit of such taxes."

Prior to 1930 intangible personal property, consisting of stocks and bonds, was generally subject to a transfer tax by States in which the corporations issuing the stocks or bonds were located, although the owner of the stocks or bonds was a non-resident and did not carry on business in the State of incorporation.

In 1930, in *Farmers Loan Co.* v. *Minnesota* (280 U. S. 204), the United States Supreme Court declared such taxation of bonds unconstitutional. (See *Matter of Sack*, 232 App. Div. 433.) In 1931, in *First National Bank* v. *Maine* (284 U. S. 312), that court likewise held invalid similar taxation of stocks.

In 1930 the Legislature of New York added a new article 10-C to the Tax Law, which went into effect September 1, 1930, and superseded article 10-A with respect to persons dying after it became effective. Under this article no provision was made for imposing a tax with respect to intangible personal property of a non-resident decedent consisting of shares of stock in a domestic

corporation. This omission was due to the decision of the Supreme Court in the *Farmers Loan Co.* case.

In 1931, by chapter 178 of the Laws of 1931, section 248-f of article 10-A of the Tax Law of 1928, which superseded the unconstitutional article 10-A, was amended to read as follows: " Whenever the tax commission shall determine that any tax collected under the provisions of this article has been erroneously collected the amount so determined shall be refunded, without interest, out of the funds in the custody of the comptroller to the credit of such taxes, but no such refund shall be made unless application therefor is made within one year from the date of the assessment of the tax and the giving of notice thereof as provided by this article."

In order to secure a refund of a tax, it is necessary that there be an appropriation and a consent of the State to the refund as no money may be paid out of the treasury of the State or any of its funds or any of the funds under its management except in pursuance to an appropriation by law. (N. Y. Const. art. 3, § 121; *Matter of Smith* v. *Loughman*, 132 Misc. 527, and cases cited; affd., in other points, 226 App. Div. 395; affd., 253 N. Y. 565.)

Since the amendment of section 248-f of article 10-A of the Tax Law by chapter 178 of the Laws of 1931, application for refunds must be made within one year from the date of the assessment of the tax and the giving of notice thereof as provided by article 10-A. While article 10-A, as enacted in 1928, has been declared invalid as to its taxing features, it has been declared valid as to its procedural features. (*Matter of Nash* v. *Lynch*, 226 App. Div. 421; affd., 253 N. Y. 564.)

In the case at bar the application for an order of mandamus was commenced by the service of a notice of motion dated March 22, 1932.

The amendment to section 248-f required applications for refund to be brought within one year from the date of the assessment of the tax and the giving of notice thereof. When the amendment became effective several years had expired since the assessment and notice of the tax in question (Petition, ¶¶ 5, 6), and the effect of the amendment was to cut off any right on the part of a petitioner here to apply for refund.

If the one-year limitation imposed by the amendment is, in effect, a statute of limitation, it would be invalid, since a reasonable time was not given after it became effective to apply for a refund. (*Gilbert* v. *Ackerman*, 159 N. Y. 118.)

But it is not a statute of limitation. Such statutes are statutes of repose destroying a remedy for some existing right. Where a statute grants a right which did not exist at common law and

prescribes a time in which it must be exercised, the limitation is of the essence of the right. (*Winter* v. *City of Niagara Falls*, 190 N. Y. 198; Wood Limitations [4th ed.], § 4; *Buckles* v. *State*, 221 N. Y. 418; *Cooper-Snell Co.* v. *State*, 230 id. 249.)

The one-year provision is a condition, not a statute of limitation, so that petitioner is now without a remedy under the refund provision. The motion must, therefore, be denied.

Order may be entered denying the application herein, with ten dollars costs.