THE PEOPLE OF THE STATE OF NEW YORK ex rel. BANKERS TRUST COMPANY and Another, as Executors, etc., of EPHRAIM L. CORNING, Deceased, Petitioners, for a Mandamus Order against MARK GRAVES, as President of the State Tax Commission, and Others, as Commissioners Thereof, Constituting the State Tax Commission, Respondents.

Supreme Court, Albany County, August 24, 1934.

*Fraser, Speir, Meyer & Kidder* [*Schuyler M. Meyer* of counsel], for the relators.

*John J. Bennett, Jr., Attorney-General* [*Seth T. Cole* of counsel; *Mortimer M. Kassell* with him on the brief], for the respondents.

SCHENCK, J. This is an application that a peremptory order of mandamus issue against the respondents, directing them to refund to petitioners $31,405.65, with interest, on account of transfer tax contingently assessed against the estate of Ephraim L. Corning.

It appears that Ephraim L. Corning died June 25, 1924, a resident of Litchfield, Conn. His will, dated May 30, 1924, was probated in Connecticut July 12, 1924, and letters testamentary thereon were issued to petitioners. The residuary estate, a part of which was placed in trust, consisted largely of stocks and bonds in New York corporations, but did not include real or tangible personal property physically located within the State of New York.

In August, 1924, a proceeding was instituted in this State to fix the transfer tax upon the estate, pursuant to article 10 of the Tax Law.

On November 17, 1924, a temporary order was entered by the Surrogate's Court of New York county, fixing the aggregate transfer tax upon property passing under decedent's will at $56,843.68. Of this amount $33,058.58 was contingently assessed upon the transfer of the remainder interests in the residuary trusts at the highest rates possible on any contingency to which they were subjected, pursuant to the provisions of section 230 of the Tax Law. The tax so assessed was paid, less the discount allowed, which left a balance of $31,405.65 contingently assessed.

At the time the said taxing order was entered and said payment made, the law as interpreted by the Court of Appeals and by the United States Supreme Court, permitted the State of New York to impose taxes upon tangible personal property consisting of stocks and bonds of corporations of this State, although the owner thereof was a non-resident. (*Matter of Bronson,* 150 N. Y. 1; *Blackstone* v. *Miller,* 188 U. S. 189.)

Since the contingent assessment of the tax, the principle has been established that a State is without jurisdiction to lay a transfer tax upon the transfer of securities of corporations organized under its laws, but owned by decedents domiciled elsewhere. (*Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204; *First National Bank* v. *Maine,* 284 id. 312; *Matter of Baer* v. *Graves,* 148 Misc. 641, 644.)

The contingencies mentioned in the will have not happened. Nevertheless, petitioners claim that they are entitled to a refund

of the tax contingently assessed, for the reason that there was no authority whatsoever to make the assessment upon the intangibles of the non-resident decedent, and that the order assessing the tax was, therefore, erroneous.

The temporary order made by the surrogate in 1924, assessing the tax, contained the following provision:

" Further Ordered that upon the falling in of each of the remainders hereinabove mentioned application may be made for an order modifying this order to provide for the final assessment and determination of the tax upon the transfer of each such remainder in accordance with the ultimate transfer or devolution thereof."

In December, 1933, the petitioners, on notice to the State Tax Commission, applied to the Surrogate's Court of New York county for an order modifying the temporary order assessing the tax made November 17, 1924, by striking therefrom the part that fixed the tax at the highest possible rate upon transfers of the contingent remainder interests, and declaring the remainders so contingently taxed exempt from taxation. An order to this effect was granted. Petitioners then made an application to the State Tax Commission for a refund, which has been denied.

The petitioners now apply for a peremptory order of mandamus to compel a refund, with interest, under section 230 of the Tax Law as amended by chapter 657 of the Laws of 1924, which went into effect May 7, 1924. This section read as follows:

" Section 230. Proceedings by appraiser * * * When property is transferred in trust or otherwise, and the rights, interest or estate of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this article, and such tax so imposed shall be due and payable forthwith by the executors or trustees out of the property transferred, and the surrogate shall enter a temporary order determining the amount of said tax in accordance with this provision; provided, however, that on the happening of any contingency whereby the said property, or any part thereof, is transferred to a person or corporation exempt from taxation under the provisions of this article, or to any person taxable at a rate less than the rate imposed and paid, such person or corporation shall be entitled to a return of so much of the tax imposed and paid as is the difference between the amount paid and the amount which said person or corporation should pay under the provisions of this article; and the executor

or trustee of each estate, or the legal representative having charge of the trust fund, shall immediately upon the happening of said contingencies or conditions apply to the surrogate of the proper county, upon a verified petition setting forth all the facts, and giving at least ten days' notice by mail to all interested persons or corporations, for an order modifying the temporary taxing order of said surrogate so as to provide for the final assessment and determination of the tax in accordance with the ultimate transfer or devolution of said property. Such return of overpayment shall be made in the manner provided by section two hundred and twenty-five of this chapter. Whenever a tax on a transfer dependent on a contingency or condition has been determined at the highest rate in the manner prescribed by the foregoing provisions, the executors or trustees, in lieu of paying the total amount so determined, may elect to file in the office of the surrogate a bond to the people of the state, approved as to form and amount by the surrogate, for the purpose of securing the payment of the difference between the tax on such transfer at the highest rate and the tax on such transfer which would be due if the contingency or condition had happened at the date of the appraisal of such estate and to pay in cash the balance of such tax as so determined; and it shall be the duty of the executor or trustee of each estate, or the legal representative having charge of the trust fund, upon the happening of such contingency or condition, to apply forthwith to the surrogate for an order fixing the tax on such transfer in accordance with the ultimate devolution thereof. The surrogate at any time may make an order increasing or decreasing the amount of such bond as justice may require."

Section 225 therein referred to read at that time as follows:

" Section 225. Refund of tax erroneously paid. If any debts shall be proven against the estate of a decedent after the payment of any legacy or distributive share thereof, from which any such tax has been deducted or upon which it has been paid by the person entitled to such legacy or distributive share, and such person is required by order of the surrogate having jurisdiction, on notice to the tax commission, to refund the amount of such debts or any part thereof, an equitable proportion of the tax shall be repaid to him by the executor, administrator or trustee, if the tax has not been paid; or if such tax has been paid, the tax commission with the approval of the comptroller shall refund out of the funds in the custody of the comptroller to the credit of such taxes such equitable proportion of the tax. If after payment of any tax in pursuance of an order fixing such tax, made by the surrogate having jurisdiction, such order be modified or reversed by the surrogate

having jurisdiction within two years from and after the date of entry of the order fixing the tax, or be modified or reversed at any time on an appeal taken therefrom within the time allowed by law on due notice to the tax commission, the tax commission with the approval of the comptroller shall refund to the executor, administrator, trustee, person or persons by whom such tax was paid, the amount of any moneys paid or deposited on account of such tax in excess of the amount of the tax fixed by the order modified or reversed, out of the funds in the custody of the comptroller to the credit of such taxes; but no application for such refund shall be made after one year from such reversal or modification, unless an appeal shall be taken therefrom, in which case no such application shall be made after one year from the final determination on such appeal or of an appeal taken therefrom, and the representatives of the estate, legatees, devisees or distributees entitled to any refund under this section shall not be entitled to any interest upon such refund, and the tax commission shall deduct from the fees allowed by this article to the county treasurer the amount theretofore allowed him upon such overpayment. Where it shall be proved to the satisfaction of the surrogate that deductions for debts were allowed upon the appraisal, since proved to have been erroneously allowed, it shall be lawful for such surrogate to enter an order assessing the tax upon the amount wrongfully or erroneously deducted."

In order to secure a refund of a tax, it is necessary that there be an appropriation and a consent of the State to the refund, as no money may be paid out of the treasury of the State or any of its funds or any of the funds under its management, except in pursuance of an appropriation by law. (N. Y. Const. art. 3, § 21; *Matter of Smith* v. *Loughman*, 132 Misc. 527, and cases cited; affd., on other points, 226 App. Div. 395; affd., 253 N. Y. 565.)

Moreover, it is provided by the Constitution, article 7, section 6. as follows:

" § 6. Claims barred by lapse of time. Neither the Legislature, canal board, nor any person or persons acting in behalf of the State, shall audit, allow, or pay any claim which, as between citizens of the State, would be barred by lapse of time. This provision shall not be construed to repeal any statute fixing the time within which claims shall be presented or allowed, nor shall it extend to any claims duly presented within the time allowed by law, and prosecuted with due diligence from the time of such presentment. But if the claimant shall be under legal disability, the claim may be presented within two years after such disability is removed."

A claim for the refund of a tax erroneously paid under an unconstitutional statute gives rise to a cause of action for money had and received, for which the limitation is six years. (*Matter of Hoople*, 179 N. Y. 308, 314; *Stuart* v. *Grattan*, 217 App. Div. 336; Civ. Prac. Act, § 48; *Matter of Furey* v. *Graves*, 148 Misc. 785.)

It is conceded that the tax not contingently assessed, cannot be refunded because of lapse of time, although the taxing statute was unconstitutional.

It is contended, however, that under the refunding provisions of Tax Law, heretofore quoted, the amount of the tax contingently assessed, under the unconstitutional provisions of the Tax Law relating to intangibles, can be refunded.

It may be conceded that unless petitioners are able to point to some provision of a statute permitting it, there can be no refund. This is necessarily so, because of the provisions of the Constitution relating to payments out of the State treasury, the provisions in the nature of a statute of limitations, and the immunity of the State from suit.

Referring to sections 230 and 225 of the Tax Law, it appears that the scheme therein outlined was to make certain that the State received the full amount of the tax upon contingent transfers by a decedent. To that end, where there were contingencies affecting the amount of the tax, the purpose of the statute was to immediately fix the tax at the highest possible rate, considering all of the contingencies, and, upon the happening of the contingencies, to make a refund if a lower tax than that actually assessed was ultimately collectible.

Neither under the letter or the spirit of sections 230 or 225 of the Tax Law may a refund be made before the happening of the contingencies or after the lapse of time as stated in section 225. These sections were not designed to cover any such a situation as has here arisen, and it is impossible to adapt the procedure therein outlined to the present status of the case at bar, without arbitrarily disregarding their plain provisions.

Reference has been made to chapter 434 of the Laws of 1934, amending section 225 of the Tax Law, as follows:

" Notwithstanding any of the foregoing provisions of this section or any other provision of law, no refund shall be made of any tax paid prior to the twelfth day of March, nineteen hundred twenty-eight, because of the lack of power on the part of this state to impose a tax upon the transfer of intangible personal property if, under the law in effect at the time of the transfer, as then interpreted by decisions of the court of appeals of this state and/or the United States supreme court, this state did have power to

impose such tax, regardless of whether such tax was paid pursuant to a taxing order or otherwise, but, subject to this exception, where it appears that a tax was paid before the entry of a taxing order and such order shows that the amount of tax due is less than the amount so paid, the tax commission, with the approval of the comptroller, shall refund to the persons entitled thereto the amount so paid in excess of the amount of tax fixed by the taxing order, out of funds in the custody of the comptroller to the credit of such taxes, provided application for such refund be filed with the tax commission within one year from the entry of such taxing order. In a case where a payment of tax was made prior to the twelfth day of March, nineteen hundred twenty-eight, before the entry of a taxing order and the decedent transferred intangible personal property and a taxing order has been or is entered subsequently to that date, if such intangible personal property was taxable under the law in effect at the time of the transfer, as then interpreted by decisions of the court of appeals of this state and/or the United States supreme court, but the state was or is without power to tax the same at the time the taxing order was or is made, the amount of any refund shall be determined on the basis of the tax that would have been payable if a taxing order had been entered at the time of the transfer according to the law as then interpreted by the courts and shall not exceed the amount by which the tax paid is in excess of a tax computed on that basis."

This amendment appears to be declaratory of the law as it existed at the time of its enactment.

Because of the prohibitory provisions of the Constitution, and the immunity of the State from suit, this court is without power to order a refund, unless the petitioners can point to a statute which expressly permits it. This, in my opinion, they have been unable to do.

The fact that the Surrogate's Court has modified the order assessing the tax, does not help the petitioners here. Petitioners now apply for a refund, but this court is without power to award it, notwithstanding the fact that it has been determined that the original assessment was beyond the jurisdiction of the court to make it.

The application is denied, without costs, and order may be entered accordingly.